**JONES et ux. v. UNITED STATES.**

Civ. No. 2775.

United States District Court

D. Colorado.

March 19, 1951.

974

Louis G. Isaacson, Denver, Colo., for plaintiff.

Henry E. Lutz, Asst. U. S. Dist. Atty., Denver, Colo., for defendant.

WALLACE, District Judge.

Andy Jones and his wife, Mary K. Jones, bring this action to recover income taxes for the calendar years 1944, 1945, and 1946 in the amounts of $1,476.22 and $1,417.23, respectively.

By virtue of stipulations agreed to by the parties, the single issue to be determined is the tax results of a division of property rights incident to a partnership dissolution agreement between Andy Jones and Durwood Jones.

In July, 1942, Andy Jones and Durwood Jones formed a partnership in Clovis, New Mexico. Among other assets the partners owned two public utility franchises, issued by the Corporation Commission of New Mexico. One franchise, hereinafter referred to as Franchise 589, authorized them to operate busses between Clovis, New Mexico, and Camp Reed, New Mexico. On December 21, 1942, the partners entered into a lease contract with O. L.

Taylor. The pertinent provisions of that agreement are summarized as follows:

1. Durwood Jones and Andy Jones as owners and operators of Franchise 589, agreed to lease their rights therein to O. L. Taylor for the duration of the war and one year after the cessation of hostilities.

2. As consideration for the lease, O. L. Taylor agreed to pay the partnership ten percent (10%) of the gross receipts from the operation of the bus line.

The Corporation Commission approved the lease January 15, 1943.

Andy Jones was called into the Army in 1943. A short time thereafter, Durwood Jones expressed a desire to terminate the partnership because army service did not permit Andy Jones sufficient time to devote to partnership affairs. After negotiations, the parties reached accord in the settlement of their affairs and terminated their joint relations by mutual agreement, only a part of which was reduced to writing. The parties evaluated their assets and then "struck a balance", each taking his proportionate share. The provision of the written dissolution agreement that is particularily material to this action, reads as follows:

"This Agreement, made and entered into this 8th day of December, A.D. 1943, by and between Durwood O. Jones, first party and Andy Jones, second party.

"Witnesseth:

\* \* \* \* \* \*

"It is also understood and agreed that the said parties own jointly a contract between them and O. L. 'Ted' Taylor, doing business as the Victory Bus Line in Clovis, New Mexico, under which contract said sums of money are paid each week, that the proceeds above expenses from said contract so long as it shall remain in force and effect, is divided equally between the parties hereto.

"That the transportation system or systems, including the Clovis Transit Company, operating the red and white busses and Clovis Yellow Cab, together with all permits, franchises and equipment are to be owned by first party who is to derive all benefits therefrom and pay all indebtedness thereof. The agreement relative to the transportation system is also to go into effect January 1, 1944. That first party agrees to bear all expenses incident to the transfer of all titles, franchises, permits, etc. and second party agrees to sign all transfers, applications for transfer, assignments, etc. that are necessary when requested to do so by first party. That first party agrees to hold second party harmless and protect him in all cases where it is necessary to use second party's name in the operation of the transfer of the transportation business on and after January 1, 1944.
\* \* \*"

It was not until August 1, 1946, that Andy Jones executed a written assignment of his interest in Franchise 589 to Durwood Jones.

It is the Government's contention that the provisions of the dissolution agreement, quoted above, cannot be construed to be a sale by Andy Jones of his interest in Franchise 589; therefore any proceeds from the operation of the bus line by O. L. Taylor accruing to Andy Jones, are taxable as ordinary income and not as installment payments for the sale of a capital asset.

The uncontradicted oral testimony of Andy Jones disclosed that the mutual intention of the partners by the agreement of dissolution, oral and written, was to effectuate a complete division of their jointly owned assets. His testimony was that at the time the contract was executed the partners only owned two franchises; so it had to be the intention of the parties to include Franchise 589 in the provisions of the contract whereby ownership in the permits and franchises was vested in Durwood Jones. Taxpayer further testified the sole consideration for his relinquishment in ownership of Franchise 589 was the monies he received from the operation of the bus line during the tenure of Taylor and no additional consideration was granted him at the time of the written assignment in 1946.

In the opinion of the court, the testimony of Andy Jones is true as to conditions and circumstances of the parties at the time the contract was executed and the

subsequent construction the parties gave to the terms of the contract. This evidence, which serves to explain the ambiguous phraseology in the contract, considered in conjunction with the language of the contract itself, discloses the parties intended an unrestricted transfer of Andy Jones' interest in Franchise 589 to Durwood Jones to become effective January 1, 1944. From that date Durwood Jones had complete dominion and control over the property and the assignment in 1946 was a mere paper transaction.

The Government did not seek to contradict or refute Andy Jones' testimony; instead it took the position the contract was unambiguous and oral testimony is inadmissible to vary or explain the terms of the contract.

 A trial court can receive material evidence to aid it in construing an ambiguous contract.[1] The situation of the parties and surrounding circumstances can be considered,[2] as well as the practical construction which the parties have given the contract.[3] A contract is ambiguous if it is reasonably susceptible of more than one interpretation as to the intention of the parties.[4]

 In the instant case the provisions of the contract in regard to the transportation system owned by the partnership do not state with sufficient clarity their mutual intentions. The language could be construed to disclose an intent to retain joint ownership in Franchise 589 for the duration of the lease agreement with Taylor but all other permits and franchises to be owned by Durwood Jones after January 1, 1944; or a different construction would indicate an intent to vest Durwood Jones with ownership in all permits and franchises but Andy Jones reserved the right to share in the proceeds from the bus franchise for the duration of Taylor's lease. For the reasons stated above the court concludes the latter construction conforms to the parties' intentions.

The remaining question is the tax results of a sale of a franchise, subject to a lease, with a reservation of the right to share in the proceeds for the lease term.

 A capital asset as defined by the Internal Revenue Code is all property not specifically excluded.[5] Courts have adopted a liberal definition of property for income tax purposes.[6] Patents,[7] copyrights,[8] insurance agency contracts[9] and other incorporeal interests have been held to be capital assets within the purview of the Code. The court is of the opinion the interest taxpayer owned in the franchise was a capital asset and the sale of the property should be treated as a capital gain.

 The means by which taxpayer was to receive the sale price does not require a different result. Capital gain treatment is not lost by providing for installment payments contingent on future sales or income.[10] The decisive issue is whether the assignor divested himself of complete and permanent control over the property.[11] If so, the amounts received after the interest was conveyed represents sale price. To hold otherwise would contravene an established principle of income tax law:

1. Sarnia Steamships, Limited, v. Continental Grain Co., 7 Cir., 1941, 125 F.2d 362; Coal & Delivery Co. v. Howard, 3 Cir., 1920, 265 F. 566.

2. Columbia Gas Const. Co. v. Holbrook, 6 Cir., 1936, 81 F.2d 417.

3. London Extension Mining Co. v. Ellis, 10 Cir., 1943, 134 F.2d 405.

4. Zehnder v. Michaud, 8 Cir., 1944, 145 F.2d 713; Shipley v. Pittsburgh & L. E. R. Co., D.C.1949, 83 F.Supp. 722.

5. Internal Revenue Code, Sec. 117(a) (1), 26 U.S.C.A. § 117(a) (1).

6. Citizens State Bank v. Vidal, 10 Cir., 1940, 114 F.2d 380.

7. Commissioner v. Celanese Corp., 1944, 78 U.S.App.D.C. 292, 140 F.2d 339.

8. Goldsmith v. Comm., 2 Cir., 1944, 143 F.2d 466.

9. Jones v. Corbyn, 10 Cir., 1950, 186 F. 2d 450.

10. Commissioner v. Celanese Corp., supra; Commissioner v. Hopkinson, 2 Cir., 1942, 126 F.2d 406.

11. Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Edison v. Comm., 8 Cir., 1945, 148 F.2d 810.

the tax liability on income from property is a concomitant of ownership,[12] except in a few situations not herein material. The converse of the immediate situation has been the subject of much tax litigation and the Supreme Court has ruled consistently that an assignment of the right to receive income by the one who earned it or by a property owner who does not relinquish "economic control" does not change the tax incidence.[13] The tax result is the same if an owner coveys his property interests but retains a right to receive all or part of the income therefrom. The income from the property is taxed to the owner and not to the person making the assignment.

Taxpayer did not acquire property rights in the lease which are capable of separation from his interest in the franchise. The proceeds he received from the operation of the bus line were an incident of ownership in the franchise. After January 1, 1944, proceeds accruing by virtue of the lease to operate, granted to Taylor, were taxable income to Durwood Jones; hence the amount received by Andy Jones represented the consideration for the conveyance of his property rights and should be treated as the sale of a capital asset.

Findings of fact, conclusions of law and a judgment order, consistent with this opinion, may be submitted for the approval of the court.

12. Blair v. Commissioner, 1936, 300 U. S. 5, 12, 57 S.Ct. 330, 81 L.Ed. 465.

13. Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Lum v. Commissioner, 3 Cir., 1945, 147 F.2d 356.