## UNITED STATES v. JONES et al.
### No. 4350.

United States Court of Appeals
Tenth Circuit.

Feb. 19, 1952.

Irving Axelrad, Washington D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and Howard P. Locke, Special Asst. to the Atty. Gen., Charles S. Vigil, U. S. Atty., and Henry E. Lutz, Asst. U. S. Atty., Denver, Colo., on the brief), for appellant.

Louis G. Isaacson, Denver, Colo., for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Andy Jones and his wife, Mary K. Jones, brought this action in the District Court, 96 F.Supp. 973, for the District of Colorado under the authority of 28 U.S.C.A. § 1346 (a) (1) to recover income taxes alleged to have been erroneously collected from them during the years 1944, 1945 and 1946.[1]

The only question to be determined is whether certain payments received by the

---

[1] The plaintiffs were residents of New Mexico and the income received by the wife for the years in question was by virtue of the community property laws of that state. Only the facts relating to the husband need be considered.

plaintiff, Andy Jones, from his former partner, Durwood Jones, after the dissolution of their partnership, are taxable as a capital gain or as ordinary income. The trial court determined that the amount received was the result of a partnership dissolution to effectuate a complete division of the partnership assets and should be treated as the proceeds from a sale of a capital asset. The United States has appealed.

The facts are stipulated or are without dispute. In July, 1942, Andy Jones and his cousin, Durwood Jones, formed a partnership in Clovis, New Mexico. The partnership conducted a number of businesses including the operation of an abstract company and an insurance agency, the ownership, management and sale of real estate, and the ownership of public utility franchises granted by the Corporation Commission of the State of New Mexico and the City of Clovis. Different franchises authorized the partnership to conduct a taxicab business on the streets of Clovis and to Camp Reed while another permitted the operation of a bus line between Clovis and Camp Reed which was about seven miles out of Clovis. In connection with the latter franchise, the parties executed the only written partnership agreement between them in which they provided that this business would be conducted by the partnership for fifty years unless terminated sooner by the parties; that they would actively engage in the business and endeavor to increase it; that expenses would be shared equally; and that profits would be divided between them from time to time as they should agree.

This franchise was leased to O. L. Taylor for "the duration of the present war, and for the period of one year after cessation of actual hostilities." Taylor agreed to pay the partnership a percentage of the gross receipts from the operation of the bus line. The Corporation Commission approved the lease on January 15, 1943. It terminated September 2, 1946, at 11:59 o'clock P.M., Mountain Standard Time.

Andy was called into the army in 1943, and on December 8, 1943, he entered into a written agreement with Durwood to dissolve the partnership and divide its assets as of January 1, 1944. That portion of the agreement relating to the disposition of the bus line franchise and the lease read:

"It is also understood and agreed that the said parties own jointly a contract between them and O. L. 'Ted' Taylor, doing business as the Victory Bus Line in Clovis, New Mexico, under which contract said sums of money are paid each week, that the proceeds above expenses from said contract so long as it shall remain in force and effect, is divided equally between the parties hereto.

"That the transportation system or systems, including the Clovis Transit Company, operating the red and white busses and Clovis Yellow Cab, together with all permits, franchises and equipment are to be owned by first party who is to derive all benefits therefrom and pay all indebtedness thereof. The agreement relative to the transportation system is also to go into effect January 1, 1944. That first party agrees to bear all expenses incident to the transfer of all titles, franchises, permits, etc. and second party agrees to sign all transfers, applications for transfer, assignments, etc. that are necessary when requested to do so by first party. That first party agrees to hold second party harmless and protect him in all cases where it is necessary to use second party's name in the operation of the transfer of the transportation business on and after January 1, 1944." [2]

The trial court was of the view that the provisions of the dissolution contract were ambiguous as to the intention of the parties in disposing of the different transportation systems and permitted the introduction of parol evidence to show their intent. The uncontradicted testimony of Andy Jones was to the effect that in arriving at a complete settlement and disposition of the partnership property, they were unable to agree upon a valuation of the bus franchise and the Taylor lease; that it was agreed that all the transportation franchises were to be transferred to Durwood and that as consideration therefor Andy was to receive one-half of the income from the Taylor

2. Durwood Jones was the first party and the plaintiff was the second party to the agreement.

lease during its existence; that he would execute the necessary assignments and transfers when requested by Durwood to do so; and that pursuant to the dissolution agreement the assignment of the bus franchise was made on August 1, 1946, to be effective September 2, 1946, when the Taylor lease expired. He testified that Durwood made monthly payments to him in accordance with this agreement.

██ The Collector contends that by the clear and unambiguous terms of the dissolution agreement Andy retained his interest in the bus franchise and the Taylor lease until its expiration in 1946, and that the parol evidence varied the terms of the written agreement and that its introduction should not have been permitted. We agree with the trial court that there was an ambiguity in the provisions of the contract which necessitated an explanation. The first paragraph of the quoted portions of the contract, if considered alone, might be construed to the effect that the partners retained their interest in it, while the second paragraph indicates that all the transportation systems, franchises, permits and equipment owned by the partnership were to be owned by Durwood who was to have all benefits received from them and pay all the expenses and indebtedness thereof and who agreed to hold Andy harmless and protect him in all cases where it was necessary to use his name in the operation of the transportation business. The substance of Andy's testimony is that in the settlement Durwood was to receive all of the transportation franchises which they owned including that of the bus line and the Taylor lease, in consideration of which Andy was to receive one-half the income from the Taylor lease. The evidence was clearly admissible under the rule announced in American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477. The trial court found that by the terms of the dissolution agreement the parties intended that Durwood should become the absolute owner of the bus franchise with complete control and dominion over it on and after January 1, 1944; that the assignment by Andy on August 1, 1946, was only for the purpose of carrying out the requirements of the agreement and con-

cluded that the amounts received by Andy during the taxable years in question were part of the purchase price provided for in the agreement and should be taxed as capital gains during the years which the payments were received. We conclude that the finding of the trial court that the transfer of the bus franchise constituted the sale of a capital asset is sustained by substantial evidence and that the judgment of the trial court is not clearly erroneous. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143; Commissioner v. Lewis, 10 Cir., 132 F.2d 709; Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406; Commissioner v. Union Pacific R. Co., 2 Cir., 86 F.2d 637.

Judgment is affirmed.