The UNION INSURANCE SOCIETY OF CANTON, LTD., Plaintiff-Appellee,

v.

WILLIAM GLUCKIN & CO., Inc., et al., Defendants-Appellants.

No. 25, Docket 28367.

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1965.

Decided Dec. 20, 1965.

John M. Speyer, Greenhill & Speyer, New York City, for plaintiff-appellee, The Union Insurance Society of Canton, Ltd.

Bert Cotton, Rein, Mound & Cotton, New York City, Ernest E. Rosenberg, Hortense F. Mound, New York City, of counsel, for defendant-appellant, The Schwab Rubber Co., Inc.

Henry J. Robinson, Kelly, Donovan, Robinson & Maloof, New York City, for defendants-appellants, Martin Schnur and Sidney Schnur, doing business as Rubber Fabrics Co.

Abbe L. Miller, New York City, for defendant-appellant National Backing Corp.

Before FRIENDLY and KAUFMAN, Circuit Judges, and HERLANDS, District Judge.*

HERLANDS, District Judge.

Defendants-appellants National Backing Corporation, The Schwab Rubber Co., Inc., and Martin Schnur and Sidney Schnur, doing business as Rubber Fabrics Company [hereinafter "National," "Schwab," and "Rubber Fabrics" respectively], appeal from an order entered on a cross-motion for summary judgment by the plaintiff-appellee, The Union Insurance Society of Canton, Ltd. [hereinafter "Union"].

The underlying suit is an action in the nature of interpleader brought by Union against all actual or possible claimants under a certain policy of fire insurance in the amount of $25,000 issued by Union to National.

In conducting its business of converting material, National performs certain processing operations on goods sent to it by its customers. For the purpose of storing such merchandise until it was processed at National's main plant, National utilized premises located at 9–11 40th Avenue, Long Island City, New York. National also stored certain of its own goods at these premises.

National carried insurance policies in an amount totaling $100,000 with the St. Paul Fire and Marine Insurance Company and the Home Insurance Company which protected it against liability to its customers in the event of loss by fire due to some fault on its part.

National also carried a standard form fire insurance policy in the sum of $15,000 with the Aetna Casualty and Surety Company [hereinafter "the Aetna policy"] for the purpose of insuring one of its customers—Vincent Horwitz Company, Inc. [hereinafter "Horwitz"]—to the exclusion of all its other customers. Both Horwitz and National were named insureds under the Aetna policy, but this policy provided that compensation for any loss would be payable first to Horwitz. National was entitled to receive only the balance of the policy's proceeds, if any, after Horwitz was indemnified. By its terms, the Aetna policy covered "contents contained in brick building situate 9–11 40th Avenue, L I C, Queens, New York."

The policy in suit is the $25,000 fire insurance policy which National procured from Union [hereinafter "the Union policy"].

A typewritten insertion in the Union policy provides—under the heading "DESCRIPTION AND LOCATION OF PROPERTY

COVERED"—that the scope of its coverage extends to the

"CONTENTS, INCLUDING CUSTOMERS' GOODS, BUT EXCLUDING CUSTOMERS' GOODS SEPARATELY INSURED WHILE CONTAINED IN BRICK BUILDING SITUATE:

9–11—40TH AVENUE

LONG ISLAND CITY

NEW YORK" (Emphasis added).

There is also a provision in the Union policy to the effect that

"this Company * * * [Union] does insure the insured named above [National] and legal representatives, to the extent of the actual cash value of the property at the time of the loss, *but not * * * in any event for more than the interest of the insured * * *.*" (Emphasis added.)

On November 3, 1959, a fire occurred at 9–11 40th Avenue, Long Island City, causing substantial damage. National, claiming damages of $13,990.59 to its own merchandise, sought to recover under both the Aetna policy and the Union policy. Aetna and Union were represented by the same claims adjuster, one Harold S. Daynard, who apportioned National's loss by attributing $6,959.05 to Aetna, which it paid, and $7,031.54 to Union, which has not yet been paid. Most of National's customers carried sufficient insurance to cover their losses. However, certain of National's customers either carried no insurance of their own or suffered losses greater than the amount of their own insurance coverage. Schwab claimed a loss of $44,782.77. The limit of its own policy with Fireman's Mutual Insurance Company was $25,000. Hence, it suffered a claimed loss of $19,782.77 which its own policy did not cover. Other National customers suffering losses in the fire who had no insurance or insurance inadequate to cover their losses included: Splendor Form Brassiere Co., Inc. ($1,523.81); Blossom Footwear, Inc. ($353.67); and Infant Socks, Inc. ($1,-067.80).

By its terms, the Union policy provided that

"No suit * * * on this policy * * * shall be sustainable in any court * * * unless commenced within twelve months next after inception of the loss."

On November 3, 1960, twelve months after inception of the loss, only three suits had been commenced against Union. They were instituted by National, Schwab, and Rubber Fabrics. By an opinion of District Judge Richard H. Levet dated February 19, 1962 and an order dated March 14, 1962, Union obtained judgments against Splendor Form Brassiere Co., Inc.; Blossom Footwear, Inc.; Infant Socks, Inc., and all the insurance companies named in this interpleader action, cutting off any rights they may have had in the Union policy, on the ground that they had failed to commence their own action within the one year period.

National and Schwab both contended below that the Union policy applies to the uninsured ($19,782.77) portion of Schwab's loss. Schwab contended that to this extent its goods were not "separately insured." In substance, the Schwab claim was based upon the theory that its goods on National's premises were not "separately insured" because Schwab's own insurance policy did not provide adequate coverage for its loss. On the other hand, both Schwab and National seemed to agree that Rubber Fabrics was "separately insured" because it had sufficient insurance to cover its loss. The bases of this contention by Schwab appear to have been in part as follows: (a) National intended the Union policy to be available to customers to the extent that they were not otherwise protected by their own coverage; and (b) Union's policy is "specific insurance" (here insuring goods at one designated location), while Schwab's Firemans Mutual policy is a "floater policy" and should not be applied until Union's policy is exhausted.

Rubber Fabrics claimed to have suffered losses of $11,499.58. Unlike Schwab, it was fully insured, by policies

with the Hanover Fire Insurance Company and the Aetna Insurance Company of Hartford, Connecticut, and has been paid by them. The insurers assert in its name that these losses were covered by the Union policy and that Rubber Fabrics' claim should have been satisfied from it before resort to them.

Three motions for summary judgment were before the District Court: (1) by Union, seeking judgment against Schwab and Rubber Fabrics; (2) by Schwab, seeking judgment against Union; and (3) by National, seeking judgment against Union in Schwab's favor as well as in National's favor, in both a personal and a representative capacity. The District Court granted the first motion; denied the second motion; and granted the third motion only to the extent of entering a judgment in favor of National against Union in the amount of $7,031.54 —the amount of National's own loss which Daynard, the claims adjuster, had attributed to Union.

The District Court held that, if any of National's customers having goods stored on National's premises had procured insurance of its own, regardless of amount, that customer's goods were "separately insured" and, therefore, excluded from coverage under the Union policy. According to this reasoning, a customer such as Schwab (who claimed a loss of over $44,000 and whose own policy's limits were $25,000) was not covered by the Union policy for the uninsured portion of its loss.

The District Court also held that National was not entitled to recover under the Union policy for the benefit of its three customers; namely, Splendor Form Brassiere Co., Inc., Blossom Footwear, Inc., and Infant Socks, Inc., the losses sustained by them. The District Court recognized that National's action for the full limits of the Union policy was commenced within one year of the date of the loss. However, the District Court reasoned that National's claim, to the extent that it was for the benefit of its three customers, was barred by the

March 14, 1962 judgment rendered against the said three customers.

National and Schwab urge this court to find that Union is liable under its policy for losses to National's customers who had no insurance of their own or whose insurance did not fully cover their losses. Rubber Fabrics, construing the policy as covering all customers save those for whose benefit National had procured separate insurance, contends that the District Court erred in granting summary judgment and that it should have permitted the case to proceed to trial so that a determination could have been made as to the proper apportionment of the proceeds of the Union policy.

### I.

Fed.R.Civ.P. 56(c) provides that judgment "shall be rendered forthwith if the pleadings * * * together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The District Court expressly found that the scope of the term "separately insured," as it appears in the Union policy, encompassed not only the Aetna policy carried by National, explicitly covering the goods of its customer Horwitz, but also other insurance separately carried by National's bailors such as Schwab and Rubber Fabrics. In accordance with this interpretation, the District Court granted summary judgment to Union against Schwab and Rubber Fabrics. We hold that the phrase "excluding customers' goods separately insured," when read in context, is ambiguous; that this ambiguity posed a genuine issue as to a material fact, namely, the parties' intent; and therefore, that summary judgment should not have been granted. The case cannot be taken from the trier of fact simply because "The lawyers for the respective parties, by the cross-motions [for summary judgment], superinduced the idea that no factual questions were involved." Hycon Mfg. Co. v. H. Koch & Sons, 219 F.2d 353, 355 (9th Cir.),

cert. denied, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278 (1955).

■ Language is ambiguous, within the meaning of the parol evidence rule, when it may reasonably be construed in more than one sense. See, e. g., Gerhart v. Henry Disston & Sons, Inc., 290 F.2d 778, 784, (3rd Cir. 1961); Zehnder v. Michaud, 145 F.2d 713, 714 (8th Cir. 1944); Jones v. United States, 96 F. Supp. 973, 976 (D.Colo.1951), aff'd, 194 F.2d 783 (10th Cir. 1952). In our view, the language of the Union policy—"excluding customers' goods separately insured"—is susceptible to at least four different reasonable readings:

(1) the insurance is intended to cover only National's interest in goods located on the designated premises, including National's interest in customers' goods other than those goods National has separately insured;

(2) the insurance is intended to cover National's interest in goods located on the designated premises or a National customer's interest in goods located on the designated premises if, and only if, there is no other insurance at all covering the goods;

(3) the insurance is intended to cover a National customer's interest in goods located on the designated premises to the extent, and only to the extent, that that customer is not otherwise insured; or

(4) the insurance is intended to cover a National customer's interest in goods located on the designated premises except where National has procured separate insurance for that customer.

■ Because the language in the Union policy under discussion is ambiguous, resort should be had to any available extrinsic evidence for the purpose of ascertaining the intent of the parties. See, e. g., Peerless Cas. Co. v. Mountain States Mut. Cas. Co., 283 F.2d 268, 278 (9th Cir. 1960); Arbuckle v. (American) Lumbermans Mut. Cas. Co., 129 F.2d 791, 793 (2d Cir. 1942); Aetna Ins. Co. v. Dickler, 100 F.Supp. 875, 877 (S.D.N.Y. 1951).

■■ The terms of an insurance policy are usually what the insurance company chooses to make them. That is the rationale of the general rule that any ambiguity is to be resolved liberally in favor of the insured. Arbuckle v. (American) Lumbermans Mut. Cas. Co., 129 F.2d 791, 793 (2d Cir. 1942). However, this rule of construction "is applicable only where the ambiguity persists after all other aids to construction are used. It certainly does not foreclose the use of parol evidence initially to resolve such ambiguity." Aetna Ins. Co. v. Dickler, 100 F.Supp. 875, 878 (S.D.N.Y.1951). It is also true that there would be much less reason for applying such a rule if the clause in issue was drafted by, and put in the policy at the behest of, the named insured. On that point, the record before us is singularly devoid of elucidative factual data. Who drafted the clause and at whose behest it was incorporated into the policy are questions presenting a pertinent area of inquiry for the fact-trier.

Since we have found that the critical language in the Union policy is ambiguous, and since the motion papers before the District Court would not support a finding that reasonable men could not differ as to the intent of the parties, it was error to have granted Union's motion for summary judgment against Schwab and Rubber Fabrics. As this court had occasion to say in Empire Electronics Co. v. United States, 311 F.2d 175, 179–180 (2d Cir. 1962):

"the court, on a motion for summary judgment, cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried; and, once having determined this affirmatively must leave those issues for determination at a trial. The problem besetting courts lies in defining what is or what is not an 'issue of material fact'. It has been said, and it is quite true, that 'no rigid or magical formula can be offered to determine' its existence. 6 Moore, Federal Practice ¶56.15(1), at 2103 (1953). This case presents us with

a situation where the so-called evidentiary facts—the underlying physical data—are not in dispute; but the inferences of fact to be drawn from them are disputed. The District Court had before it affidavits from both of the parties * * *. From the evidentiary facts so presented, the District Court made an effort to draw inferences of the intentions of the [principals] * * *. But, there were ample evidentiary facts to support either * * * inference * * *.

* * * Where only one inference could reasonably be drawn from the undisputed evidentiary facts, then summary judgment would be proper, for, in the language of Rule 56(c), 'the moving party is entitled to a judgment as a matter of law.' "

However, " 'a judge may not, on a motion for summary judgment, draw fact inferences.' " Id. at 180.

■■ The court is not unaware of the possibility that the parties may be able to adduce but little additional competent evidence before the fact-trier on the issue of intent. Nevertheless, sound judicial administration strongly suggests that a court should not attempt to reconstruct the intent of the parties in a complicated factual situation before they have had an opportunity to present evidence on that issue before the fact-trier. Having determined that the existence of a triable issue of fact made the granting of summary judgment below improper, we are obliged to return that issue to the trier of fact. See Empire Electronics Co. v. United States, 311 F.2d 175, 180–181 (2d Cir. 1962). Cf. Asbill and Snell, Summary Judgment Under the Federal Rules—When an Issue of Fact is Presented, 51 Mich.L.Rev. 1143, 1146 n. 15 (1953).

Therefore, we reverse the decision below and remand the case for trial on the issue of what the parties intended as the scope of the coverage of the Union policy.[1]

## II.

As indicated, the affidavits do not satisfactorily answer questions such as: what conversations or correspondence, if any, took place between Union and National relating to the insertion in the Union policy of the typed provision in question; how the premium was affected by the insertion of that provision; by whom the language was formulated; or whether the provision was put in at the behest of Union or National.

Moreover, the affidavits are also unsatisfactory in light of the express requirements of Fed.R.Civ.P. 56(e) that affidavits in support of and in opposition to a motion for summary judgment (1) "shall be made on personal knowledge"; (2) "shall set forth such facts as would be admissible in evidence"; and (3) "shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ To the extent that the affidavits submitted by Union's and Schwab's attorneys are based upon personal knowledge, the information they provide is of little assistance to the court. The statements they contain which are not based upon personal knowledge will not be considered by the court. Cf. Dressler v. MV Sandpiper, 2 Cir., 331 F.2d 130, 131 (1964).

The affidavit of Abraham J. Halpern, National's treasurer, is inadequate because it contains only conclusory statements concerning National's purpose in procuring the Union policy.

■ Affidavits in support of or in opposition to a motion for summary judgment must contain admissible evidentiary facts. Conclusory statements and statements not made on personal knowledge do not comply with the requirements of Fed.R.Civ.P. 56(e) and, therefore, may not be considered.

1. Inasmuch as the facts remain to be explored, we do not consider it useful to comment at this time on the line of authority typified by Automobile Ins. Co. v. Springfield Dyeing Co., 109 F.2d 533 (3d Cir. 1940), cited in the briefs.

Where, as here, the affidavits are incomplete or ambiguous, a summary judgment motion may not be granted. See Miller v. General Outdoor Advertising Co., 337 F.2d 944 (2d Cir. 1964); Dean Construction Co. v. Simonetta Concrete Const. Corp., 37 F.R.D. 242, 248 (S.D.N.Y.1965).

### III.

We next consider that part of National's motion for summary judgment seeking a judgment against Union in National's favor both for its own loss and, in a representative capacity, for the losses of the three National customers.

The District Court granted National's motion for summary judgment against Union only to the extent of $7,031.54— the amount of National's own loss which the claims adjuster had attributed to Union. It denied National's summary judgment motion in so far as it sought recovery from Union on behalf of National's three customers.

As already pointed out, prior to the date of the motions presently before us, Union had moved below for summary judgment against those three National customers. Union based its motion on the fact that those three customers had not commenced actions within the one year time limit specified in the Union policy. The District Court held that there was no genuine issue as to any material fact and granted summary judgment for Union by an order dated March 14, 1962.

The District Court's order was prefaced by the words: "there being no just reason for delay in the Entry of Judgment; it is hereby ORDERED AND ADJUDGED that the plaintiff recover judgment against the defendants * * *." Under the provisions of Fed.R.Civ.P. 54 (b) the above-quoted language makes the order a final judgment and, therefore, appealable.

Where a bailee has taken out insurance in its own name covering its bailor's goods, a prior judgment adverse to the bailor who sued on that policy bars an action by the bailee who seeks to recover on the same policy on behalf of its bailor. In tort law, the rule is well established that an adverse judgment in an action by a bailor against a third person for conversion or harm to chattels will preclude a subsequent suit by the bailee to the same extent as if the first suit had been by the bailee. See Restatement, Judgments § 88(2) at 430 (1942). That result stems from the fact that the bailee has a claim only in its capacity as representative of the bailor. See Restatement, Judgments § 88, comment on subsection (2) at 432 (1942).

In the contract-insurance context, on the other hand, the bailee's rights appear to be something more than simply representative because the bailee itself insured the bailor's goods for its own business reasons and maintains its action on a contract supported by consideration which it has paid to the insurer. Nevertheless, the reported cases appear to treat the bailee's interest as representative. They speak of the bailee as being entitled to recover "on behalf of" or to hold monies recovered as a "trustee" for the bailor. See, e. g., Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 543, 544, 23 L.Ed. 868 (1876); In Re Podolsky, 115 F.2d 965, 967 (3rd Cir. 1940); Mord v. New York Indemnity Co., 216 App.Div. 252, 253, 214 N.Y.S. 693, 694 (1926), aff'd, 244 N.Y. 589, 155 N.E. 908 (1927).

In addition to the foregoing dictates of *stare decisis*, policy considerations persuasively suggest a rule of *res judicata* that a judgment denying the bailor's claim bars a subsequent suit by the bailee. In reality, it is the bailor's right of recovery which the bailee seeks to relitigate. The desiderata underlying the doctrine of *res judicata* apply to the present situation.

Moreover, the District Court's order of March 14, 1962 affected National's claims on behalf of its three customers because that order expressly "orders and adjudges" that the customers in question "are not entitled to recover any sum of money from the plaintiff [Union]," and that "the aforesaid defendants have no rights whatsoever * * *" under the Union

policy. A decision permitting an award to National as trustee for the benefit of its three customers would, by indirection, effectuate a recovery to which the District Court ruled the said customers were not entitled.

Therefore, we hold that the District Court's decision must be affirmed in so far as it limits National's recovery to $7,031.54—the amount of National's own loss which the claims adjuster attributed to Union.

The case is remanded to the District Court for proceedings in accordance with this opinion.

Reversed and remanded.