**Jerome H. LEMELSON, Plaintiff-Appellant,**

v.

**IDEAL TOY CORPORATION, Defendant-Appellee.**

**No. 409, Docket 32753.**

United States Court of Appeals Second Circuit.

Argued March 5, 1969.

Decided March 28, 1969.

Francis Thomas Daley, Stratford, Conn., for plaintiff-appellant (Arthur T. Fattibene, New York City, on the brief).

Morton Amster, of Amster & Rothstein, New York City, for defendant-appellee (Samuel L. Cohen, Hollis, N. Y., and James Reisman, New York City, on the brief).

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and McLEAN, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

■■ This is an appeal from a judgment of the United States District Court for the Southern District of New York, Milton Pollack, Judge, dismissing an action for breach of contract to pay royalties on a toy called the Water Basket-

* Of the Southern District of New York, sitting by designation.

ball Game.[1] Judge Pollack concluded from the "unambiguous" terms of the license agreement that no royalty payments were due, and gave summary judgment for the defendant. We reverse. We think that the license agreement is ambiguous on its face, and that a trial is necessary to clarify this ambiguity.

The plaintiff, Jerome H. Lemelson, is a toy inventor. On April 29, 1960, he entered into a license agreement with Ideal Toy Corp. ("Ideal") for the manufacture of certain toys.[2] That agreement gave Ideal an exclusive license to "make, use and sell" items known as "inflatable target toys," [3] as well as an exclusive license on any patents which might issue from two then pending patent applications. A patent did in fact issue on the Water Basketball Game, which is admittedly not an "inflatable target toy," and when Ideal refused to make royalty payments on this toy, plain-

tiff commenced this action for breach of the license agreement.

Whether royalties are due on the Water Basketball Game depends on the meaning of paragraph 7(a) of the license agreement, which provides that if any patents should issue from the then pending patent applications, then Ideal

shall receive an exclusive license under said patent or patents for the life thereof *without any further payments other than those provided for hereunder, and under the same terms and conditions as set forth herein.* [Italics added.]

Focusing almost exclusively on paragraph 3 of the license agreement, which provides for royalties of 5 percent on inflatable target toys,[4] Judge Pollack held that the agreement was unambiguous and that Ideal was not obligated to pay royalties on the Water Basketball Game. He admitted that there were reasons why the plaintiff "would not have

1. Still pending is a claim by plaintiff for patent infringement on a toy called the Elephant Ring Toss Game. This toy is specifically excluded by the "defining clause" of paragraph 2, although Ideal is apparently licensed to make it under paragraph 7. Judge Pollack denied Ideal's motion for summary judgment on the Elephant Ring Toss Game, holding that the two paragraphs were "irreconcilable" without extrinsic evidence as to the parties' intent. Since the denial of a motion for summary judgment is not a "final decision" under 28 U.S.C. § 1291, Chappell & Co. Inc. v. Frankel, 367 F.2d 197, 199 (2 Cir. 1966) (*en banc*), the ruling on the Elephant Ring Toss Game has not been appealed and is not before us. The ruling on the Water Basketball Game, however, is properly appealable under Rule 54(b), since this is a situation where there are multiple claims, see Gottesman v. General Motors Corp., 401 F.2d 510 (2 Cir. 1968), and since Judge Pollack made the requisite certification of finality.

2. The license agreement was executed as part of the settlement of an earlier lawsuit between Lemelson and Ideal. The settlement agreement provided that in return for $15,500, Lemelson would release Ideal from all claims for breach of confidential disclosure of certain inventive ideas. That agreement also provided that

Lemelson would release Ideal from any claims for infringement of certain patents. It further provided for the execution of two separate license agreements, one for inflatable pull toys and the other for inflatable target toys. The latter license agreement is the subject matter of this action.

3. Paragraph 2 provides that the "inflatable target toys" intended to be included in the license agreement are toys which have "a base upon which there are supported one or more inflated targets, with provision for seating said targets on said base as by weighting said targets or by seating said targets in shallow recesses, which targets are to be knocked over by an object, such as a ball, which is to be thrown through the air at such targets." Specifically excluded from the "defining clause" of paragraph 2 are certain games identified by name. The Water Basketball Game is not mentioned, of course, since it is concededly not an "inflatable target toy."

4. Paragraph 3 provides, in pertinent part, that "Ideal agrees to pay Lemelson as royalties for the license hereby granted a sum equal to five per cent (5%) of the net wholesale price for all said inflatable target toys shipped, less returns."

agreed to give the defendant a free license with respect to an unknown number of toys encompassed by the patent," but said that the court was precluded from "inquiring into the psychological motivation of the parties" where the terms of the agreement were unambiguous.

While we are in agreement with Judge Pollack as to the applicable principles, we think that the agreement is anything but clear on the obligation to pay royalties for the Water Basketball Game. Paragraph 3 does not say that the obligation to pay royalties shall be limited to "inflatable target toys" only. Nor does paragraph 7(a) say that Ideal shall receive exclusive licenses on all pending patents *without any payment whatever*. It simply says that Ideal shall receive exclusive licenses on certain pending patent applications, including the Water Basketball Game, "without any further payments other than those provided for hereunder, and under the same terms and conditions as set forth herein." While paragraph 7(b) refers to patents issued for "inflatable target toys," this section provides only that plaintiff shall have the right to make licenses nonexclusive if Ideal does not pay royalties of $500 or more in any given year.[5] It does not say that Ideal shall have royalty-free licenses on the patent applications specified in paragraph 7(a), and indeed, if a royalty-free license were intended, we think the contract would have said so more clearly.

In our view, the language of paragraph 7(a) is susceptible to at least two possible interpretations. The first is that royalties are payable only on inflatable target toys, as defined in paragraph 2. This was the view of Judge Pollack. The second is that royalties are due on all licensed items, at the same rate and under the same terms as provided for inflatable target toys. The phrase "without any *further* payments *other than* those provided for hereunder" seems to contemplate that Ideal will make some sort of payment in return for the exclusive license, and the phrase "under the *same* terms and conditions as set forth herein" might well mean that royalties are to be paid on the Water Basketball Game at the same 5 percent rate applicable to inflatable target toys.

Since both are possible interpretations, we think there was a factual question as to the parties' intent which could not be resolved on a motion for summary judgment. Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 950 (2 Cir. 1965); Cram v. Sun Insurance Office, Ltd., 375 F.2d 670, 674 (4 Cir. 1967); Socony Mobil Oil Company, Inc. v. Humble Oil & Refining Co., 387 F.2d 155, 157 (10 Cir. 1967).

■ Summary judgment procedure, of course, is available only in cases where there is no genuine issue of material fact. Rule 56(c), Fed.R.Civ.P. This rule authorizes summary judgment "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial * * * [for] the purpose of the rule is not to cut litigants off from their right to trial by jury if they really have issues to try." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944). On a motion for summary judgment, the court "cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried." Empire Electronics Co. v. United States, 311 F.2d 175, 179 (2 Cir. 1962). Since there was a triable issue of fact, summary judgment should not have been granted.

---

5. Paragraph 7(b) provides:
In the event that Ideal, during any year after the issuance of a patent or patents which contain claims covering said inflatable target toys as manufactured, used or sold by Ideal, shall not pay royalties in the minimum amount of Five Hundred Dollars ($500.00), or make a minimum payment in said amount, then Lemelson shall have the right to make the license granted hereunder non-exclusive.

Where, as here, the contract is ambiguous on its face, extrinsic evidence may be introduced to show what the parties intended at the time they entered into the contract. Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., *supra*, 353 F.2d at 951; Interpublic Group of Companies, Inc. v. On Mark Engineering Co., 381 F.2d 29, 32–33 (9 Cir. 1967). It is unclear from the agreement whether there is an obligation to pay royalties on the Water Basketball Game, and we think that the parties were entitled to have the trier of fact hear evidence as to their intent before deciding the question. We therefore reverse and remand for trial.

Reversed and remanded.