Elbert G. Sharp v. Commissioner.
Sharp v. Commissioner
Docket No. 3126-71.
United States Tax Court
T.C. Memo 1972-159; 1972 Tax Ct. Memo LEXIS 95; 31 T.C.M. (CCH) 795; T.C.M. (RIA) 72159; July 31, 1972
Davis W. Moore, Jr., 301 Equitable Bldg., 730 17th St., Denver, Colo., for the petitioner. John D. Moats, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the income tax liability of petitioner for the taxable year 1967 in the amount of $414.48. The issue is whether the petitioner is entitled to an alimony deduction under section 215 [1] for payments made on a mobile home mortgage and for parking space rental payments for said mobile home. *96 Findings of Fact Some of the facts have been stipulated; they are so found and incorporated herein by this reference. Petitioner filed his income tax return for the taxable year 1967 with the district director of internal revenue, Denver, Colorado. He was a legal resident of Boulder, Colorado, at the time of the filing of the petition in this case. The petitioner and Wilma E. Sharp (Wilma) were married on August 25, 1956. For the first five years of their marriage Wilma worked as a clerk-typist. During this five-year period, petitioner attended college and worked during the summer and part time during the school years. From 1956 through 1961, the couple lived in a mobile home which was originally Wilma's before she was married. From 1961 through 1966, except for a three-week period during which she had a child, Wilma was employed full time. Petitioner became permanently employed in 1961, and in that same year the couple traded in the original mobile home for a 1962 Marlette mobile home. The trailer which they had previously occupied served as a downpayment on this new mobile home. On February 17, 1966, Wilma, through her attorney, Rupert Ryan (Ryan), filed for divorce in *97 the District Court of Boulder County, Colorado. Petitioner did not have his own attorney during the divorce negotiations. However, he did consult Wilma's attorney. In the course of the divorce discussion, it was brought out that petitioner desired not to pay any alimony and wished to keep certain Wyoming property which the parties owned. Wilma was not insistent that she receive alimony. The parties mutually agreed upon provisions for child support. Then, based on the foregoing discussions, Ryan drew up an agreement for the purpose of reaching a satisfactory settlement between the parties. Ryan subsequently drafted the divorce decree which for the most part reflected this agreement. that divorce decree, in pertinent part, reads as follows: IT IS FURTHER ORDERED that the plaintiff have as her sole property the house-trailer now occupied by the plaintiff, together with the furniture therein, and that the defendant shall continue to make the monthly mortgage payments on said trailer, and to continue to pay the parking rental for said trailer. IT IS FURTHER ORDERED that the defendant transfer to the plaintiff his interest in the 1964 Ford automobile, and that the plaintiff shall assume *98 payments on said automobile. IT IS FURTHER ORDERED that the plaintiff transfer all of her right, title and interest to the defendant in and to the 1963 Corvair automobile, and transfer all of her right, title and interest in and to two (2) acres of real estate located at or near Casper, Wyoming, with the defendant to assume and pay the remaining balance due on said real estate. No express provision was made for the payment of support in the nature of alimony. The outstanding balance on the trailer mortgage at the time of the divorce was approximately $2,000 and the mortgage was scheduled to be paid off in approximately two years. At the time the divorce 796 agreement was effectuated, petitioner and Wilma agreed and understood that the parking rental payments were to continue only until the mortgage on the mobile home was paid off. Petitioner in fact continued to make the rental payments only until the mortgage on the mobile home was paid in full. In his return for the taxable year 1967, petitioner claimed an alimony deduction in the amount of $1,668.60 which is the sum of the payments made in that year on the trailer mortgage and the trailer rental space. Respondent in his *99 notice of deficiency increased petitioner's taxable income to reflect the disallowance of this claimed deduction. Opinion The issue is whether petitioner's payments on the trailer mortgage and the trailer rental space are periodic payments in discharge of a legal obligation which is imposed on or incurred by the husband because of the marital or family relationship. If so, these payments are deemed alimony payments deductible by the husband under section 215 [2] and includable in the wife's income under section 71. [3] Petitioner contends that his payments meet the requirements as found in sections 71 and 215, while respondent claims that these payments do not constitute alimony but, instead, represent the settlement of marital property rights and as such are not deductible by the husband. *100 If the payments may properly be classified as consideration paid to the wife for her property rights, there is no dispute that they are not covered by section 71(a). So much is in any event clear not only under section 1.71-1(c)(4), Income Tax Regs., which provides that section 71(a) does not apply to payments which are attributable to an interest in property which "originally belonged to the wife," but also under a well established line of cases recognizing that payments made in fulfillment of either a division of property or a property settlement (related to a divorce or separation) are capital in nature and are not includable in the wife's gross income under section 71. * * * [Enid P. Mirsky, 56 T.C. 664, 672 (1971)]
The very question before this Court is to determine whether the payments constitute alimony or part of a property settlement. In aid of this determination, we have accepted certain uncontested testimony of petitioner and Wilma. This testimony explains in full the parties' agreement as to the duration of the rental payments and serves to clear up the ambiguity in the agreement on this point. [4]
*101 Determination of the real substance of a divorce settlement and the tax effect of provisions respecting payment turns upon the particular facts and circumstances of each case "and not upon any labels that may or may not have been placed upon them." [Emphasis added] Ann Hairston Ryker, 33 T.C. 924, 929 (1960). See also Houston v. Commissioner, 442 F. 2d 40 (C.A. 7, 1971), affirming Mary Schwab, 52 T.C. 815 (1969), and McCombs v. Commissioner, 397 F. 2d 4 (C.A. 10, 1968), affirming a Memorandum Opinion of this Court. 797 One of the key factors in this facts and circumstances test is the intention of the parties as to the agreement. See Phinney v. Mauk, 411 F. 2d 1196 (C.A. 5, 1969). In the present case, the petitioner has done an excellent job of trying to convince this Court that if these payments were in the nature of alimony they would be considered periodic. However, as the respondent's regulations point out, qualification for section 71 depends not only on the periodicity of the payments, but also on their character. [5]
*102 Possibly some part of petitioner's payments herein might have been intended as alimony type payments. However, based on the evidence of record, we are not convinced what portion, if any, was so intended. If in fact the payments were in part settlement of property interests and in part settlement of the obligation of support, a segregation is called for and "the burden of proof is upon the petitioner, and insofar as [he] has not explained these payments the Commissioner's determination is approved as to them." Mirsky, supra, at 677. [6]
The petitioner has not carried his burden in the instant case. On the contrary, based on the following facts and circumstances, we hold that the payments were intended not as alimony, but rather as compensation to Wilma for her interest and participation in acquiring the total of the marital property. The only disinterested witness, Ryan, testified that his impression *103 of the negotiations was that they were intended solely to settle how best to divide the marital property. During the ten years of marriage, Wilma worked the entire time, while petitioner worked full time only over a five-year period. Wilma owned the original mobile home which was not only home for the couple for five years, but later served as the downpayment on their new home. Wilma's substantial material contributions to the marriage certainly entitled her to her fair share of the property acquired during the marriage. In discussing the settlement, petitioner refused to pay alimony and insisted on retaining certain Wyoming property. Petitioner then assumed the mortgage on the mobile home and promised to pay the rental payments for a limited time only. In light of the lack of sufficient contrary evidence, we must view his assumption of these obligations as nothing more than a settlement of property rights and payments in the nature of a quid pro quo for the Wyoming property. Furthermore, there are numerous cases in which support type transfers such as mortgage payments have been found to constitute payments made as part of a property settlement and not in the nature of support. *104 See, for example, Van Orman v. Commissioner, 418 F. 2d 170 (C.A. 7, 1969), affirming a Memorandum Opinion of this Court. According to Colorado law, Wilma did not have an absolute right to alimony. See Gleason v. Gleason, 162 Colo. 212, 425 P. 2d 688 (1967), and Neander v. Neander, 39 Coll. 495, 84 P. 69, 70 (1906). In addition, the very facts which we have considered in determining the nature of petitioner's payments have been taken into account by Colorado courts in providing for property divisions. See Nunemacher v. Nunemacher, 132 Colo. 300, 287 P. 2d 662 (1955). While recognizing that we would not be bound by any characterizations of the payments under state law, Joslin v. Commissioner, 424 F. 2d 1223 (C.A. 7, 1970), affirming 52 T.C. 231 (1969), we must note that the relevant Colorado law only serves to further enforce our view that none of these payments must per se be considered support payments. Decision will be entered for the respondent. 798 Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * ↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) Decree for support. - If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.↩
4. Apparently the parties do not dispute the need to clear up the ambiguity in the contract. Where the writing is ambiguous, as here, extrinsic evidence is proper to explain its meaning. See United States v. Jones, 194 F. 2d 783↩ (C.A. 10, 1952).
5. Sec. 1.71-1(d)(3)(i), Income Tax Regs., provides: Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. [Emphasis added]↩
6. See also Phinney v. Mauk, 411 F. 2d 1196 (C.A. 5, 1969), and Soltermann v. United States, 272 F. 2d 387↩ (C.A. 9, 1959), a case wherein the burden of proof role was reversed when the Commissioner sought to collect an alleged erroneous refund.