**John L. LOONEY, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE CO., Defendant.**

**No. 74 C 520.**

United States District Court, E. D. New York.

May 4, 1976.

John M. Speyer, Greenhill & Speyer, New York City, for plaintiff.

John J. Donohue, Lindenhurst, N. Y., for defendant.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

Plaintiff, John L. Looney, seeks to recover $45,000 under a flood insurance policy issued to him by the defendant, Great American Insurance Co., pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.* (hereinafter the "Act").[1] Defendant moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing that portion of the complaint which demands judgment in excess of the sum of $22,500. Plaintiff cross moves to dismiss defendant's fifth affirmative defense.[2] Jurisdiction is conferred by 28 U.S.C. § 1331(a) and 42 U.S.C. § 4053.

The following facts are undisputed. John L. Looney was the owner of a dwelling located at Ocean Beach, Fire Island, New York. On May 9, 1970, after having applied to the U.S. Department of Housing and Urban Development, the Ocean Beach, Fire Island community was accepted into the Emergency Program of the Act.[3] On November 6, 1971, defendant issued to plaintiff a policy of flood insurance in the amount of $17,500 for the subject building and $5,000 for its contents.[4] At the request of plaintiff, this policy was renewed on November 6, 1972.

1. The National Flood Insurance Act of 1968 was enacted to provide previously unavailable flood protection to property owners in flood-prone areas. "The program operates through an insurance industry pool under the auspices of the National Flood Insurance Association, by means of a Federal subsidy to make up the difference between actuarial rates and the rates actually charged to consumers for the protection provided. In many cases, the Federal subsidy amounts to more than 90 per cent of the cost of the insurance." 24 C.F.R. § 1909.2(a).

2. In light of the fact that this Court has received and considered extra-pleading material, plaintiff's cross motion to strike shall be treated as a motion for partial summary judgment pursuant to Rule 56(d), Fed.R.Civ.P. *See* 10 Wright and Miller, Federal Practice and Procedure: Civil § 2737 (1973); *see also* 5 Wright and Miller, Civil § 1381 (1973).

3. In order to qualify for the sale of federally subsidized flood insurance before December 31, 1971, a community must agree to adopt and enforce adequate land use and control measures consistent with federal criteria. 24 C.F.R. §§ 1909.2(b), 1909.22. The 1968 Act also required an actuarial rate-making study to be undertaken for each community before it could become eligible for the sale of flood insurance in the Regular Program. In Section 408 of the Housing and Urban Development Act of 1969 (42 U.S.C. § 4056) Congress established an Emergency Program to permit the early sale of insurance in flood-prone communities. This program does not affect the requirement that a community must adopt adequate land use and control measures but permits insurance to be sold before a study is conducted to determine actuarial rates for the community. 24 C.F.R. §§ 1909.3, 1914.3.

4. The maximum amount of coverage for a policy issued pursuant to the Emergency Program is one-half of the maximum limit of coverage under the Regular Program.

Thereafter, the Ocean Beach community applied to the U.S. Department of Housing and Urban Development for admission into the Regular Program. The Department notified the community of its acceptance into the Regular Program on November 17, 1972. Thus, on that date additional flood insurance coverage became available to the community. On December 10, 1972 plaintiff submitted an application for additional insurance coverage. This application was accepted by defendant on December 15, 1972, and thereby became an endorsement to plaintiff's policy, effective December 10, 1972. The endorsement increased the coverage on plaintiff's dwelling from $17,500 to $35,000, and on its contents from $5,000 to $10,000. The loss alleged by plaintiff occurred on or about December 15, 1972.

The issue presented by these motions concerns the effective date of the increased coverage on plaintiff's dwelling and its contents. The resolution of this issue rests upon an interpretation of the following language found at the bottom of the aforementioned endorsement:

> The inception date of any new, increased or additional insurance coverage shall be at least 15 calendar days after the date of this application [the "waiting period"]. This 15-day waiting period shall not apply during the initial 30 calendar days from the effective date of first availability of flood insurance in any designated area [the "grace period"].

Defendant's position is that because the alleged loss occurred on or about December 15, 1972 (five days after the effective date of the endorsement), the 15-day waiting period for the inception date of the increased coverage had not expired at the time of the alleged loss. Defendant further contends that the grace period is not applicable because it ran from the date that the Ocean Beach community entered the Emergency Program (May 9, 1970). Thus, in defendant's fifth affirmative defense it is alleged that if defendant is liable to plaintiff for any sum, then in no event is defendant liable in excess of $17,500 for damage

sustained to the dwelling or $5,000 for damage sustained to its contents.

Plaintiff's position is that the grace period was effective at the time that the Ocean Beach community entered the Regular Program (November 17, 1972). Plaintiff therefore contends that since his application for additional insurance coverage was accepted and became effective within 30 calendar days from the date that the Ocean Beach Community entered the Emergency Program, the waiting period was not operative, and thus the increased coverage was effective at the time of the alleged loss.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". In *Heyman v. Commerce and Industry Insurance Company*, 524 F.2d 1317 (2d Cir. 1975), the Second Circuit provided a thorough review of the principles relevant to the granting of a summary judgment. There Chief Judge Kaufman stated in part:

> . . . But, the "fundamental maxim" remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2d Cir. 1971). Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This rule is clearly appropriate, given the nature of summary judgment. This procedural weapon is a drastic device since its prophylactic function, when

exercised, cuts off a party's right to present his case to the jury. *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972). *Heyman, supra*, at 1319.

Both parties assert that the interpretation of the waiting period and grace period clauses in the endorsement is a question of law for the court. In determining whether the interpretation of a contract poses a question of law or a question of fact one must take note of the language of Judge Friendly in *Painton & Company v. Bourns, Inc.*, 442 F.2d 216, 233 (2d Cir. 1971):

. . . The point that the ultimate issue, the construction of a contract, is a question of law for the court, see 9 Wigmore, Evidence § 2556 at 522 (3d ed. 1940); 4 Williston, Contracts § 616 at 649 (3d ed. 1961), does not dictate a different result. When a contract is so ambiguous as to require resort to other evidence to ascertain its meaning and that evidence is in conflict, the grant of summary judgment is improper. See 6 Moore, Federal Practice ¶ 56.17[11] and [43] (2d ed. 1966); *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 950–953 (2d Cir. 1965); *Lemelson v. Ideal Toy Corp.*, 408 F.2d 860, 862–864 (2d Cir. 1969); cf. *Meyers v. Selznick Co.*, 373 F.2d 218 (2d Cir. 1966).

Thus, the threshold question presented is whether the subject contractual provision is ambiguous.

In this regard defendant contends that the provision in question is clear and unambiguous, and is subject to but one reasonable interpretation. Defendant asserts that the phrase "first availability of flood insurance in any designated area" in the grace period clause should be given its ordinary and plain meaning, i. e., the time that a community enters the Emergency Program. An analysis of the subject contractual provision demonstrates that it is ambiguous on its face and that defendant's interpretation is most unreasonable.

At the outset one must note that the subject language is on a change endorsement form. Hence, the person reading the language would be applying for either in-creased or reduced insurance coverage. If the term "first availability of flood insurance" were to mean the time that a community enters the Emergency Program, it would follow that the person applying for increased or reduced insurance coverage would be unable to receive the benefit of the grace period. Simply stated, it is highly unlikely that one would be applying for increased or reduced coverage within 30 days from the date that his community enters the Emergency Program. Indeed, it is possible but most improbable that the grace period clause was intended to apply to the individual: who applies for insurance, whose application is accepted, and who then applies for increased or reduced insurance coverage, which application is accepted—all within 30 days from the date of acceptance into the Emergency Program. If this Court were to adopt the "plain meaning" ascribed to the subject contractual provision by the defendant, it would in effect render nugatory the grace period clause. It is well settled that meaning and effect should be given if possible to every part of a contract, and that a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions. See 13 Appleman, Insurance Law and Practice § 7383 (1976); Restatement of Contracts § 236 (1932). As it would be unreasonable to adopt an interpretation that neutralizes the grace period clause, it is necessary to attempt to ascertain an interpretation that would give the clause meaning and effect.

Plaintiff contends that the term "first availability of flood insurance in any designated area" means the time that a community enters the Regular Program. This would appear to be a reasonable interpretation for an ordinary person of average understanding who is applying for increased flood insurance coverage. See 13 Appleman, Insurance Law and Practice § 7384 (1976). When a community enters the Regular Program it has available double the insurance coverage which it had under the Emergency Program. It would

appear to be reasonable for a member of such a community to assume that the grace period clause is intended to operate as an incentive for him to apply for increased coverage within 30 days from the date that his community entered the Regular Program. For an individual in this situation, this interpretation would be especially compelling in light of the fact that it would be the only apparent interpretation which would give meaning and effect to the clause.

 From the foregoing discussion it is apparent that the contractual provision in question is ambiguous on its face. Moreover, the fact that both parties contend that the facts are undisputed does not necessarily mean that the construction of the subject provision is a question of law for the Court. *See American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.* In this regard this Court is mindful of the admonition of the Second Circuit in *Heyman v. Commerce and Industry Insurance Company, supra,* where the parties were "at loggerheads" over the proper interpretation of their obligations under an insurance settlement agreement. There the Court held that summary judgment was improper since the "parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous". *Heyman, supra,* at 1320. In so holding, Chief Judge Kaufman reiterated an oft-stated principle that has its roots in a long line of Second Circuit cases: "Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper". *Id.* at 1320.

In *The Home Insurance Company v. The Aetna Casualty and Surety Company, et al.,* 528 F.2d 1388 (2d Cir. 1976), the Second Circuit, relying upon *Heyman,* reversed the granting of summary judgment by the district court which had held that the interpretation of a contract was a question of law for the court and extrinsic evidence offered by the defendants as to the contractual

intent of the parties and the custom of the insurance industry was to be excluded from consideration. Indeed, it is noteworthy that in *Home Insurance Company* and *Heyman* the Second Circuit reversed the granting of summary judgment where the district courts had before them cross motions for summary judgment.

 Were a question of law presented, this Court would be inclined to strictly construe the provision in question against the defendant insurance company. However, in light of the *Heyman* case and its predecessors this Court is constrained to hold that the interpretation of the subject contractual provision poses a triable issue of fact.

Accordingly, both motions for summary judgment are denied.

SO ORDERED.