**BLUE DIAMOND COAL COMPANY,**
Plaintiff-Appellant,

v.

**HOLLAND–AMERICA INSURANCE COMPANY, Lexington Insurance Company, John Basil Thomas Bird & Companies and American Re-Insurance Company, Defendants-Appellees.**

Supreme Court of Tennessee,
at Knoxville.

May 7, 1984.

Foster D. Arnett, Dan D. Rhea, Knoxville, for plaintiff-appellant; Speight & Parker, Nashville, Wyatt, Tarrant & Combs, Louisville, Ky., of counsel.

E. Bruce Foster, Jr., Knoxville, Richard J. Geddes, Chicago, Ill., John David Cole, Bowling Greene, Ky., for defendants-appellees.

## OPINION

DROWOTA, Justice.

This case involves a question of insurance coverage. Plaintiff-Appellant, Blue Diamond Coal Company, contends that the insurance policies at issue extend coverage to it for common law liability resulting from wrongful death actions brought against it by the survivors of fifteen miners who were killed by a mine explosion in a Kentucky coal mine. Defendants-Appellees, Holland-America Insurance Company et al.,[1] argue that the policies in question do not extend coverage to Blue Diamond because the deceased miners were working for Scotia Coal Company when the accident occurred. Because the insurance policy purports to extend coverage to the insureds for liability resulting from injury to employees only, Holland-America contends that Blue Diamond is not covered.

The case was heard by the trial court on cross-motions for summary judgment after numerous affidavits, interrogatories, requests for admissions and production of records had been filed and discovery depositions taken. The trial judge granted Blue Diamond's motion and ordered a writ of inquiry to determine the amount of recovery. Judgment was entered entitling Blue Diamond to recover $4,788,607.00. Holland-America filed an appeal and the Court of Appeals, in a split decision, reversed the trial court and dismissed the complaint against Holland-America.

I

Blue Diamond has its home office in Knoxville and has extensive underground coal mining operations at several locations in Kentucky. The Kentucky mines are actually operated by wholly owned subsidiary corporations. Blue Diamond and its subsidiaries have identical officers and directors. Scotia Coal Company was the first subsidiary formed by Blue Diamond and operates the mine in Lechter County, Kentucky. Blue Diamond Mining, Inc., a second subsidiary formed by Blue Diamond, operates the Leatherwood mines. Although some engineering services are supplied to the subsidiaries, Blue Diamond conducts no active mining operations directly but functions as a holding company.

During the period in which the questioned insurance policies were in effect two explosions at the Scotia mine resulted in the death of thirty miners. The next of kin of fifteen of the deceased miners brought suit against Blue Diamond in the United States District Court for the Eastern District of Kentucky for wrongful death. The plaintiffs alleged that Blue Diamond was negligent in maintaining the safety conditions of the mine.

Blue Diamond defended the wrongful death actions by asserting a workmen's compensation "shield." Blue Diamond contended that it was the "employer" or "contractor" of the deceased miners and there-

fore entitled to immunity under the Kentucky Workmen's Compensation Act. The District Court found that Blue Diamond had the primary responsibility for mine safety functions at the Scotia mine, but granted Blue Diamond's motion for summary judgment concluding that Blue Diamond was a "contractor" under the Act. The Sixth Circuit Court of Appeals reversed and held that Blue Diamond should not be characterized as either a "contractor" or "employer" under Kentucky's Workmen's Compensation Act. The Court concluded that "a parent [corporation] is not immune from the tort liability to its subsidiary employees for its own, independent acts of negligence." *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 663 (6th Cir.1979). The Court specifically "held that Blue Diamond is not an 'employer' of Scotia's miners for purposes of the [Kentucky Workmen's Compensation] Act." *Id.* at 663.

Holland-America refused to defend Blue Diamond in the *Boggs* suit or to extend coverage because the deceased miners were employees of Scotia Coal and not Blue Diamond. Following remand by the Sixth Circuit, the *Boggs* case was settled for approximately 5.8 million dollars. Blue Diamond then initiated this action against Holland-America seeking coverage under the insurance policies at issue.

## II

The policies under which Blue Diamond seeks coverage were purchased in 1973 through Marsh & McLennan, an insurance broker in Atlanta, Georgia. Marsh & McLennan obtained layered group coverage for Blue Diamond and its subsidiary Scotia Coal. Blue Diamond Mining, Inc. was added to these policies in 1974 after its formation. The amount of coverage provided by each defendant insurer is shown in the following chart:

| | Amount of Coverage Per Occurrence | Insurer |
|---|---|---|
| First | $ 100,000 | Blue Diamond Coal Company Self-Insurance Retention (SIR) |
| Next | 500,000 | Holland-America Insurance Co. |
| Next | 500,000 | Lexington Insurance Company |
| Next | 2,400,000 | John Basil Thomas Bird & Companies (Lloyd Underwriters and Companies) |
| Next | 4,800,000 | " |
| Next | 1,800,000 | American Re-Insurance Company |
| TOTAL | $10,000,000 excess $100,000 SIR | |

The underlying policy followed by the other policies was that of Holland-America. The disputed provision of that policy provides:

### EXCESS WORKMEN'S COMPENSATION

In consideration of the premium charged, Underwriters hereon hereby agree to indemnify the Employer, who shall have accepted the Workmen's Compensation Act and shall have been duly qualified as a Self-Insurer under that Act in the State(s) set forth in Paragraph 1 Section (b) of this Certificate and shall during the period of this Certificate remain so duly qualified, in the manner following:

1. (a) If at any time during the period commencing at 12:01 AM on the 1st Day of April, 1975 and ending at 12:01 AM on the 1st day of April, 1976 any Employee in the immediate service of the Employer shall sustain any personal injury (fatal or non-fatal) by accident or occupational disease while engaged in the service of the Employer in work forming part of or process in his business and the Employer shall be liable to make compensation for such injury solely under or by virtue of the Work-

men's Compensation Law and/or the Employers' Liability Law and/or Common Law Liability and/or the Occupational Disease Law of the State(s) set forth in Section (b) of this paragraph which may be in force at the time such injury is sustained the Underwriter shall indemnify the Employer to the extent hereinafter mentioned against all sums for which the Employer shall be so liable and will, in addition, be responsible for 'Costs' as hereinafter defined and limited.

Holland-America insists that the insurance afforded by these policies is limited by the words "Employees in the immediate service of the Employer." Therefore, Blue Diamond is not covered because the deceased miners were employees of Scotia and were killed while in the immediate service of that corporation. They further assert that this same question was decided in the *Boggs* case, and that Blue Diamond is barred by collateral estoppel to relitigate the issue. We do not agree that *Boggs* settles the question involved in this litigation.

As stated above, the question in the *Boggs* case was whether a parent corporation is immune from common law liability as a result of its own, independent acts of negligence causing injury to employees of its wholly-owned subsidiary corporation. The Sixth Circuit held that Blue Diamond was not the employer of the deceased miners for purposes of the Kentucky Workmen's Compensation Act. Consequently, Blue Diamond was exposed to common law liability and could not rely on immunity from such action by virtue of the Workmen's Compensation Act.[2] The present action involves different parties and the issues, although similar, are by no means identical.

In *King v. Brooks*, 562 S.W.2d 422 (Tenn.1978), this Court stated that "[u]nder the doctrine of collateral estoppel, when an issue has been actually and neces-

sarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." *Id.* at 424. The application of collateral estoppel requires identity of issues and identity of parties or their privies. *King v. Brooks, supra; Shelley v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709 (1966). The issue before this Court concerns coverage for common law liability under the insurance policies in question and not Blue Diamond's relationship to the Scotia Coal miners as defined by the Kentucky Workmen's Compensation Act. Resolution of the issues in the present litigation requires interpretation of the language of the policies whereas the *Boggs* court was faced with the construction of the Kentucky Workmen's Compensation Act with regard to the relationship of the parent corporation to the employees of its subsidiary corporation.

## III

The trial court, in granting Blue Diamond's motion for summary judgment, found that the deceased miners were not employees of Blue Diamond, rather, that they were employees of Scotia Coal. In his memorandum opinion, the trial court stated:

In determining whether an individual is an employee of another many factors must be considered and no single one is absolutely determinative. Those indicia most often referred to are: who hired the person in question and who has the authority to fire him; who pays the employee; who instructs him as to his hours and the details of his duties; who pays the employer's share of Social Security taxes; who withholds his income tax and remits it to the revenue service. In this case the answers to all of the questions is the same i.e. Scotia Coal Company.

However, the court further found that this was not controlling and that the various insurance policies must be examined "to discover if this plaintiff has coverage for

2. Ky.Rev.Stat.Ann. § 342.690 (1983), provides in relevant part:

[T]he liability ... under this chapter shall be exclusive and in place of all other liability of such employer to the employee.

its losses suffered" as a result of the Scotia Coal mining disaster.

It is first noted that throughout the insurance documents the term insured, assured or employer is in the singular. Only two policies in their language even recognize that there might be more than one insured. The Lexington policy in its cancellation clause provides that the first named insured (Blue Diamond Coal Co.) may cancel the insurance for all named insured, and that the insuror may cancel as to all insured by notice to the first named insured. The American Re-Insurance Company policy provides that if there is more than one insured, that will not increase the limits for each accident. This clearly indicates recognition, by the insuror, that more than one of the named insured might incur liability as a result of a single accident.

Another point of interest, is the amendment endorsement made when Blue Diamond Mining, Inc., was formed and took over operation of the Leatherwood mines. The named insured was amended to read: "Blue Diamond Coal Co. and/or Blue Diamond Mining, Inc. and/or Scotia Coal Co." This and the fact that throughout the insurance documents the terms insured, assured and employer seem to be used interchangably, indicates to the court an intention to insure against both joint and severable liability incurred by those companies insured.

.    .    .    .    .

It is the opinion of the court that the total effect of the insurance was to indemnify any of the named insureds for losses within the various policy limits, brought about by personal injury or death of any of the employees of those corporations.

The Court of Appeals concurred with the trial court's finding that the deceased miners were employees of Scotia Coal and not Blue Diamond. In reversing the trial court, the Court of Appeals found no ambiguity in the policies and construed the language according to its usual and ordinary meaning. *Parker v. Provident Life & Accident Ins. Co.,* 582 S.W.2d 380 (Tenn. 1979). The Court went on to say that the trial "court was in error in holding the policies extended coverage to each insured for all of the covered employees."

With regard to Blue Diamond's position that the policies extended it coverage since they insure against "common law liability," the Court of Appeals held that "[t]he policies provide the same limitation on the application of common law coverage as they do on workmen's compensation, employer's liability or occupational disease. That is, the insured had to be the employer of the employee at the time of the fatal or non-fatal injury."

## IV

▌ As aptly stated by the Court of Appeals, the paramount rule of construction in insurance law is to ascertain the intent of the parties. *Palmer v. State Farm Mut. Auto Ins. Co.,* 614 S.W.2d 788 (Tenn.1981); *Interstate Life & Acc. Ins. Co. v. Gammons,* 56 Tenn.App. 441, 408 S.W.2d 397 (1966). That intent is to be derived from the four corners of the policy giving effect to all parts. *Interstate Life & Acc. Ins. Co. v. Gammons, supra.* However, where the policy is ambiguous, the intent of the parties may be derived from extrinsic evidence outside the policy. *Coble Systems, Inc. v. Gifford Co.,* 627 S.W.2d 359. (Tenn.App.1981). We disagree with the finding of the Court of Appeals that the policies contain no ambiguity. It is therefore impossible to arrive at the intent of the parties from the four corners of the insurance policy.

▌ We find the word "employer" as used in the limiting phrase "employee in the immediate service of the employer" to be ambiguous. The ambiguity exists "from the ambiguous state of extrinsic circumstance to which the words of the instrument refer," thereby creating a latent ambiguity. *Coble Systems, Inc. v. Gifford Co., supra* at 362. The language of the policy taken together with extrinsic facts

lends itself to more than one reasonable inference of the intent of the parties.

It is reasonable to infer that the parties intended to treat the three corporations as one insured entity indemnified against liability to the employee of any one of its three components. On the other hand, we may reasonably infer from the use of the word "employer" that the parties intended coverage to extend only to the corporate entity whose employees were injured in its immediate service.

## V

■ As previously stated, this case was determined on motion for summary judgment by the trial court. Tennessee Rule of Civil Procedure 56.03 provides in pertinent part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties to this action moved for summary judgment, alleging no genuine issue of material fact and relied on the plain meaning of the insurance policies. However, we believe that it was error for the trial judge to decide the case on this basis.

In *Prescott v. Adams*, 627 S.W.2d 134 (Tenn.App.1981), the Court of Appeals reversed the trial court's grant of a motion for summary judgment stating: "although the facts may not have been in dispute, a dispute did exist as to the proper interpretation of those facts. Summary judgment ... is not proper where, although the basic facts are not in dispute, parties in good faith may disagree nevertheless about the inferences to be drawn from those facts." *Id.* at 138–39. *See also, Hill v. Cantor*, 38 F.R.D. 503 (E.D.Tenn.1965). Since we have found that the questioned provisions of the insurance policies give rise to more than one reasonable inference, it follows that summary judgment was improper.

In the case of *Union Insurance Soc. of Canton, LTD v. William Gluckin & Co.,*

353 F.2d 946 (2d Cir.1965), the Second Circuit Court of Appeals addressed this question and concluded that summary judgment was not proper for determining intent of parties to an insurance policy with an ambiguous provision.

The problem besetting courts lies in defining what is or what is not "an issue of material fact." It has been said, and it is quite true, that "no rigid or magical formula can be offered to determine" its existence. (citation omitted.) This case presents us with a situation where the so-called evidentiary facts—the underlying physical data—are not in dispute; but the inferences of fact to be drawn from them are disputed. The [trial court] had before it affidavits from both parties .... From the evidentiary facts so presented, the [trial court] made an effort to draw inferences of the intentions of the [principals] .... But, there were ample evidentiary facts to support either ... inference.

*Id.* at 951–52.

The factual setting to which the insurance policies related was, to say the least, very complicated. As we stated above, more than one inference could be drawn as to the intention of the parties from the language of the policies read within that factual context. Accordingly, a triable issue was presented and the suit should not have been decided on motions for summary judgment.

In the frequently quoted case of *Evco Corporation v. Ross*, 528 S.W.2d 20 (Tenn. 1975), Justice Harbison commented on the use of summary judgment as follows:

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, *or where there is uncertainty as to whether there may be such a dispute*, the duty of the trial court is clear. He is to overrule any motion for

summary judgment in such cases. (emphasis added.)

*Id.* at 24–25.

We find that this case is not a proper case for disposition on motions for summary judgment. Accordingly, the Court of Appeals is reversed and this cause is remanded to the trial court for trial on the issue of what the parties intended as to the scope of coverage of the policies.

COOPER, BROCK and HARBISON, JJ., concur.

FONES, C.J., dissents.

FONES, Chief Justice, dissenting.

I respectfully dissent.

I agree with the majority opinion of the Court of Appeals insofar as it concludes that (1) the miners were not employees of Blue Diamond, but were employed by Scotia Coal Company; (2) there was no ambiguity in the coverage limitation to "any employee in the immediate service of the employer"; and (3) the policies cannot be interpreted as treating the three named insureds as one and extending to each named insured coverage against liability to the employees of the other two employers.

In my opinion these conclusions require the result reached by the Court of Appeals, dismissal of plaintiff's suit.