PEOPLE'S BANK OF ELK VALLEY,    )
                                )
     Plaintiff/Appellant,        )      Appeal No.
                                )      01-A-01-9506-CV-00260
v.                              )
                                )      Lincoln Circuit
AMERICAN BANKERS FINANCIAL       )      No. 128-88
SERVICES, INC., et al,           )
                                )
     Defendants/Appellees.       )

**FILED**

**December 10, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE COURT FOR LINCOLN COUNTY

AT FAYETTEVILLE, TENNESSEE


THE HONORABLE LEE RUSSELL




STEPHEN G. ANDERSON
Baker, Donelson, Bearman
 & Caldwell
900 Gay Street, S.W., Suite 2200
P. O. Box 1792
Knoxville, Tennessee  37901
     ATTORNEY FOR PLAINTIFF/APPELLANT



Walter W. Bussart
Barbara G. Medley
Bussart & Medley
101 West Commerce, Suite 306
Lewisburg, Tennessee  37091
     ATTORNEYS FOR DEFENDANTS/APPELLEES




REVERSED AND REMANDED


                              SAMUEL L. LEWIS, JUDGE

# O P I N I O N

Plaintiff, People's Bank of Elk Valley ("People's Bank"), appeals from the trial court's order granting summary judgment to defendant, American Banker's Financial Services, Inc. ("American") and dismissing People's Bank's complaint.

The complaint focused on American's failure to insure loans that American had allegedly agreed to insure. Initially, People's Bank sought to recover the entire amount of all the loans and consequential damages regardless of whether the underlying loans had gone into default. As the case progressed, however, People's Bank norrowed its focus to those loans that had actually gone into default and the portions of those loans (principal and interest) that American had allegedly agreed to insure.

Following discovery, both parties moved for summary judgment. In February 1992, the trial court denied People's Bank motion for partial summary judgment, granted American's motion for summary judgment, and dismissed People's Bank's complaint. People's Bank appealed the trial court's judgment as to thirty-eight of the original fifty-two loans.

The facts out of which this case arose are as follows. In the summer of 1985, Manufacturer's Mortgage Underwriters, Inc. ("MMU") approached the president of People's Bank . MMU proposed an arrangement in which People's Bank would fund loans secured by manufactured homes. If People's Bank made the loans under certain conditions, they could package the loans and resell them on the secondary market. MMU represented to People's Bank that the risk was small because People's Bank could obtain credit insurance and would only hold the loans for a brief time.

2

As part of this arrangement, American issued a manufactured home credit insurance policy in August 1985 naming People's Bank as the insured. The section of the insurance policy entitled "Insuring Agreement" provided:

> We agree to provide insurance coverage for losses caused by the **default** of a borrower whose **loan** is secured by a **manufactured home** which occur during the Commitment Period shown on the Commitment of Insurance. Your coverage is subject to all policy terms and conditions.

The relevant portions of the "General Policy Conditions" were as follows:

1.  REQUIREMENT FOR INSURANCE
    **We** [American] agree to issue a Commitment for Insurance for each eligible **loan** advanced by **You** after the effective date of the policy. **You** agree to submit a Request for Commitment of Insurance on forms furnished by **Us** on all eligible **loans** advanced by **You** after the effective date of this policy. **Your** request must be made by the 10th of the month following the purchase date of the **loan.** **We** agree to provide **You** with the Commitment of Insurance within 30 days after receipt of **Your** request.

    * * *

5.  MISREPRESENTATION AND FRAUD
    **We** [American] have the option to cancel an individual Commitment of Insurance if one of **Your** employees or appointed agents has concealed or materially misrepresented any of the information **We** require on a **loan** or **borrower.**

    * * *

8.  INFORMATION AND REPORTS
    On any **loan** to be insured **You** must supply **Us** with the information and documentation **We** require by the 10th of the month following the date of the **loan.**

    * * *

    If at any time **We** request additional information **You** will promptly provide **Us** with the information.

    * * *

18. CANCELLATION
    **You** [People's Bank] may cancel this policy at any

time by returning it to **Us.**

**We** [American] reserve the right to cancel this policy at any time by mailing a 10 day written notice to **You** at **Your** address last known to **Our** authorized agent with postage fully pre-paid.

The policy provided that People's Bank would pay a single premium to American which would cover the life of the loan. Shortly after American issued the policy, a representative of American met with two officers from People's Bank to discuss the policy. The representatives from People's Bank disclosed to American that People's Bank did not have experience in mobile home financing or in selling loans on the secondary market.

People's Bank made fifty-two loans, which were secured by manufactured homes, between 30 August 1985, the date the policy was issued, and January 1986. The loans had an aggregate face value of approximately one and one-half million dollars.

American admitted receiving requests for commitments of insurance on forty-eight loans. It issued commitments for insurance on ten of the loans and refused to insure the remainder.

People's Bank divided the forty-eight loans into four categories based on American's disposition of the requests for commitment of insurance. First, there were eighteen loans that American refused to insure because the requests for commitment of insurance were allegedly made after the time period provided in the policy. Second, there were seven of the preceding eighteen loans that American refused to insure because it claimed that People's Bank had made misrepresentations regarding the employment or deaths of the loan applicants. Third, American refused to insure twenty loans because of the alleged misrepresentations made in the other loans. Fourth, there were ten loans which American insured, but

4

for which it cancelled payment.  The parties have resolved the issues regarding this last group of loans.

American refused to issue commitments for insurance on the first eighteen loans because they did not promptly receive the requests for commitment of insurance.  American alleged that they received the requests for commitment of insurance on 23 December 1985 and that People's Bank made the loans in September, October, and November 1985.  American insisted that the policy required that they be in receipt of the requests by the 10th of the month following the month in which People's Bank made the loans. Although the policy obligated American to act upon the requests for commitment of insurance within thirty days, American did not advise People's Bank of its refusal to insure these loans until 19 June 1986, some five months after People's Bank submitted the requests for commitment of insurance.  American's letter conveying their refusals stated in pertinent part:

> Thankyou [sic] for forwarding me a copy of the agreement between Manufactured Mortgage Underwriters and The Peoples[sic] Bank.
>
> In addition to the lists of loans furnished you in my letter of May 30, 1986, I am enclosing a list of loans that were received at our office on December 23, 1985.  This list totals 18 loans.
>
> Unfortunately, we are unable to insure these loans because they do not comply with Paragraph 1 under General Policy Conditions of the Manufactured Home Credit Insurance Policy.  All of these loans had effective dates of September and October, 1985 and therefore should have been submitted to American Bankers by the 10th of the following month.

American insisted that it did not have an obligation to issue commitments for insurance as to the seven loans in the second group because of alleged misrepresentations concerning the borrowers' debts or places of employment.  American found these misrepresentations through phone audits, credit reports, and investigations conducted by Equifax.  American did not allege that

5

the misrepresentations were attributable to People's Bank.

American refused to issue commitments for insurance as to the twenty loans in the third group because of the alleged misrepresentations in the other loans. American also insisted that People's Bank did not adequately explain discrepancies in the applications. As a result, American suspended its obligation to insure the loans. American explained its action in a letter dated 30 May 1986, four months after People's Bank submitted the requests for commitment of insurance to American and three months after American would have ordinarily issued the commitments for insurance. That letter stated in pertinent part:

> This letter confirms our telephone conversation on Friday, May 23 in which I advised you that we had not yet received the delinquency report from Manufactured Mortgage Underwriters for the month of April. Also, I advised you that in recent audits we had discovered discrepancies on employment relative to the borrower. As information, the amount that is past due for May is $502.87.
>
> Attached is a list of loans that were returned to Manufactured Mortgage Underwriters on May 23, 1986. As I indicated on the phone, we would not be underwriting these loans until audit discrepancies were cleared up and until we were confident all conditions of the above policy were complied with.
>
> <u>Please consider the above policy suspended for coverage of any additional loans not shown on the attached list of inforce loans</u>. The suspension is effective immediately and is in effect until further notice.

On 18 July 1986, American notified People's Bank that it had cancelled the policy. People's Bank insisted that it suffered losses on the loans because of borrowers' defaults and because of American's refusal to insure the loans.

People's Bank presented four issues on appeal. They are as follows:

> I. Did the Manufactured Home Credit Insurance Policy ("the Policy") issued by American Bankers Insurance Company of Florida ("ABIC")

6

create an enforceable obligation on the part of ABIC to insure all "eligible" loans made by the People's Bank of Elk Valley ("People's Bank")during the term of the Policy or until it was terminated by ABIC?

II. Did ABIC breach its obligation under the Policy when it refused to insure eligible loans for no reason other than unexplained discrepancies in <u>other</u> loans?

III. Did ABIC breach its obligation under the Policy by refusing to insure loans solely because they were not submitted for insurance within the time period specified in the Policy?

IV. Did ABIC breach its obligation under the Policy by refusing to insure any loans in which a borrower misrepresented his employment history or debts?

It is the obligation of courts "to enforce contracts according to their plain terms." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Courts are to interpret insurance policies, like other contracts, by giving words their common and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). "[T]he paramount rule of construction in insurance law is to ascertain the intent of the parties." *Blue Diamond Coal v. Holland-America Ins. Co.*, 671 S.W.2d 829, 833 (Tenn. 1984). If language in a policy is found to be ambiguous, i.e., "susceptible of more than one reasonable interpretation," it will be "construed against the insurance company and in favor of the insured." *Tata*, 848 S.W.2d at 650.

We are reviewing the dismissal of People's Bank complaint on motion for summary judgment.

In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts ... must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied.

*Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993) (citations omitted).

It has been repeatedly stated by this Court that the purpose of a summary judgment preceding is not

> the finding of facts, the resolution of disputed
> factual issues, or the determination of conflicting
> inferences reasonably to be drawn from the facts.
> The purpose is to resolve controlling issues of
> law, and that alone.

*Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988).

Summary judgment is appropriate when, after construing all of the evidence most favorably to the nonmoving party, there are no genuine issues of material fact and the law entitles the movant to a judgment. *Byrd*, 847 S.W.2d at 214.

With these rules in mind we discuss the issues presented by the plaintiff. People's Bank has stated that the central issue on appeal is whether American's "refusal to issue certificates of insurance on thirty-eight loans was a breach of the credit insurance policy it issued to People's Bank." The question we must answer is when did the obligation of American to insure attach to a specific loan.

People's Bank insisted that American's obligation to insure a loan attached, if at all, at the time People's Bank made the loan. That is, if the loan met the eligibility requirements at that time, the policy obligated American to insure the loan and to issue a commitment for insurance. They admitted that the policy did not obligate American to insure a loan if the loan did not meet the eligibility requirements.

People's Bank further argued that "any factual review of loan documentation undertaken by the insurance company after the loan is advanced is done not to decide whether the company wants to insure the loan but to confirm whether the loan, when made, met the eligibility requirements in the Policy." Stated another way, People's Bank insisted that once they made the loan, American no longer had the discretion to decide whether it wanted to insure the

8

loan. If the loan met the objective criteria the parties had agreed to, it was an "eligible" loan and the policy entitled People's Bank to insurance regardless of whether American was "comfortable" with it.

The trial court, however, found that there was no obligation to insure any of the loans until after American had made a discretionary decision that it wanted to insure a specific loan and had issued a commitment for insurance as to that loan. The trial court held that refusing to insure the thirty-eight loans was defensible because American had no obligation to insure the loans unless and until it was comfortable with the paperwork and it had actually issued commitments for insurance.

From our review of this record, we are of the opinion that People's Bank has shown that there is a genuine issue of material fact as to whether American agreed to insure all eligible loans and as to whether the eligibility of a loan was a fact that People's Bank could determine prior to making the loan by referring to the objective criteria set forth in the policy. There is also a material question as to whether the thirty-eight loans issued by People's Bank met the eligibility criteria at the time People's Bank made the loans.

Therefore, it results that the summary judgment granted to American is reversed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are assessed to defendant/appellee, American Bankers Financial Services, Inc.

_____
SAMUEL L. LEWIS, JUDGE

9

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
WILLIAM C. KOCH, JR., J.

10

HENRY F. TODD, P.J., M.S.

WILLIAM C. KOCH, JR., J.