IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 7, 2007 Session

## TENNESSEE FARMERS MUTUAL INS. CO. v. KENT CHERRY, ET AL.

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5965     Joseph H. Walker, III, Judge**

_____

**No. W2007-00342-COA-R3-CV - Filed April 7, 2008**

_____

In this appeal we must determine whether an injured party was a "farm employee" within the meaning of a farm owner's liability insurance policy. The alleged employee is the farm owner's father. He was grinding corn to feed the farm owner's cattle when he was injured. The father and his wife filed suit against the son and his wife seeking to recover damages as a result of the accident. The son's farm owner's liability policy provided coverage for occurrences to "farm employees" in certain instances. The insurer filed this declaratory judgment action seeking a declaration that it had no duty to defend or indemnify the insureds because the father was not a farm employee. The trial court held that the father was a farm employee and ordered the insurer to defend and indemnify the insureds in the underlying lawsuit. We affirm.

**Tenn. R. App. P. 3.; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., joined,

Andrew H. Owens, Memphis, TN, for Appellant

William Dan Douglas, Jr., Ripley, TN, for Appellees, Kent Cherry and Cathy Cherry

Charles M. Agee, Jr., Dyersburg, TN, for Appellees, Gerald Cherry and Shirley Cherry

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This case involves a family of cattle dealers. Gerald Cherry's father and grandfather were in the cattle business, and Gerald eventually owned and operated his own business, a sole proprietorship known as Gerald Cherry Livestock Company. Gerald Cherry Livestock Company bought and sold cattle. Gerald had two sons, Kent Cherry and Doug Cherry. Kent worked for Gerald Cherry Livestock Company performing duties such as feeding the cattle. Kent was not paid a certain salary or wage for his work, but according to Gerald, Kent "just got what he needed, what he wanted." Kent could write checks out of Gerald Cherry Livestock Company's business checking account.

As Gerald neared retirement age, Kent took on a greater role in operating Gerald Cherry Livestock Company. For about five years, both Kent and Gerald were in charge of the business, and they considered themselves to be joint owners of the business. When Gerald turned 63 years old, he "technically retired" and began receiving social security retirement benefits. According to the parties, "all things were turned over to [Kent]" at the bank, but there was no contract involved with the transfer of the business, and no money changed hands. After the transfer, Gerald no longer had any ownership interest in the business, its equipment, or the land where it operated.

The parties did not advertise or announce to the public that Gerald was retiring. The property and equipment continued to be insured in Gerald's name, and the telephone book continued to list "Gerald Cherry Livestock Company" beside Gerald's home telephone number. Kent simply began conducting the cattle business as a sole proprietorship known as Cherry Cattle and Land Company, and he listed the business's income and expenses on his tax returns. However, Gerald continued to work with Kent in the cattle business. Each morning they would meet and discuss what needed to be done. Kent had the ultimate "say so" regarding the business and would tell Gerald what tasks to perform. However, Gerald would sometimes tell Kent what to do, and Kent would obey him because he was his father.

Gerald would feed, "doctor," haul, and generally look after the cattle, sell, trade, and bargain for cattle, and sometimes negotiate purchases of equipment. Gerald did not have set working hours, and he did not receive an hourly wage or certain salary. Instead, he was authorized to write checks on the business checking account for whatever he needed. Most of his household bills were paid from the business account, such as his insurance premiums, property taxes, grocery bills, utilities, haircuts, etc. Some of the payments to or for Gerald were deducted by Cherry Cattle and Land as business expenses, but other payments made to or for him were treated as personal expenses and not deducted. Kent and Cathy also used the business account to pay for some of their own personal expenses, which were not treated as deductions for Cherry Cattle and Land.

On December 22, 2003, approximately ten years after Gerald "technically retired," Kent asked Gerald and Marvin Fisk, an employee of Cherry Cattle and Land Company, to grind enough

corn to feed the cattle through the holidays. The corn was located in grain bins on the "Humphreys Farm," which was owned by Kent and his brother, Doug. Gerald and Marvin were using a tractor and grinder owned by Cherry Cattle and Land Company to grind the corn, and they hooked the two machines together by a "PTO," or power take off. They started the tractor and began servicing it by oiling its chains. Apparently, Gerald's clothing became entangled in the machine, and he was pulled into it and seriously injured. Gerald was hospitalized for an extended period and unable to work for approximately six months.

Gerald and his wife, Shirley Cherry, subsequently filed suit against Kent and his wife, Cathy Cherry, in the Circuit Court of Lauderdale County, Tennessee, seeking to recover damages as a result of the accident. Kent and Cathy Cherry claimed that their insurer, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), had a duty to defend and indemnify them in the lawsuit. Their farm owner's liability insurance policy contained an endorsement entitled "Farm Employers Liability," which provided:

> . . . Any term in the policy in conflict with any provision in this endorsement shall be of no effect and inapplicable.
> > Coverage E – Personal Liability is amended to extend liability coverage to insureds for occurrences to farm employees while engaged in the farming operations of an insured at or away from the insured premises.
> > Coverage F – Medical Payments to Others is amended to include as a medical covered person a farm employee who suffers a medical covered injury arising out of an occurrence while engaged in the farming operations of an insured.[1]

The term "farm employee" was defined in the policy, in relevant part, as follows:

> Farm employee means your employee, under the direction of an insured, whose duties and acts are in connection with your farming operations.
> > But farm employee does not mean:
> > 1. a person working under an exchange labor agreement;
> . . .

Tennessee Farmers filed this declaratory judgment action in the Circuit Court of Lauderdale County, seeking a declaration that it had no duty to defend or indemnify Kent and Cathy Cherry because Gerald Cherry was not a "farm employee" within the meaning of the policy. Tennessee Farmers did not dispute that Gerald was engaged in a farming operation when he was injured, but it contended that Gerald was not an "employee" of Kent Cherry and/or Cherry Cattle and Land

---

[1] The bold emphasis on all defined terms has been removed.

Company.[2]  A bench trial was held on January 18 and 19, 2007, before Judge Joseph Walker. Several witnesses testified, and the parties introduced the deposition testimony of various witnesses, along with numerous exhibits.

At the conclusion of the trial, the judge took the matter under advisement and allowed the parties to submit additional memorandums in support of their positions.  The judge ultimately concluded that Gerald was a "farm employee" within the meaning of the policy and ordered Tennessee Farmers to defend and indemnify the insureds in the underlying lawsuit.  The court entered a final order that included the following findings relevant to this appeal:

> The Complaint for Declaratory Judgment came on for consideration on January 18 and 19, 2007, upon the testimony of witnesses and exhibits from which the court finds as follows:
> Gerald Cherry, father of Kent and Doug Cherry, retired from the cattle business in the 1990's.  His son Kent continued in the cattle business, operating sometimes under the name of Cherry Cattle and Land Company.  From time to time Gerald would help in the operation, as needed. . . .
> . . .
> On December 22, 2003, Gerald Cherry was injured on the 3 acre Humphrey property by a grinder machine owned by Kent. Gerald has sued Kent.  Tennessee Farmers denies coverage, and denies they have to defend the suit.
> Gerald had no ownership interest in the business of Kent. Gerald retired from his own cattle business years before the accident. Kent had a cattle business of his own.  Gerald would help Kent from time to time and was paid for work, as he needed money.  Gerald testified he was paid for the work done for Kent by the payment of some of his expenses.  Gerald was on social security and did not draw a salary per se.  Kent testified that his father did not own an interest in Kent's cattle business.  Gerald would do some work for him when

<hr>

[2] The parties also presented other arguments that are not at issue on appeal.  Tennessee Farmers argued that Kent's insurance policy did not provide coverage because the Humphreys Farm where the accident occurred was not listed as an "insured premises" on his insurance policy.  Instead, the Humphreys Farm was insured under Gerald's policy. Exclusion 6 of Kent's policy provided that there was no coverage for bodily injuries arising out of the "ownership, maintenance, or use of any premises which is not the insured premises."  We read the trial court's order as finding that Exclusion 6 of Kent's policy did apply to initially exclude coverage because the Humphreys Farm was not an insured premises, and the Cherrys do not present any argument relative to this issue on appeal.  However, there would still be coverage if Gerald was a "farm employee" because the "Farm Employers Liability" endorsement extended coverage to occurrences to farm employees "at or away from the insured premises."

Also at trial, the Cherrys argued that Kent's policy should be reformed because his insurance agent added the Humphreys Farm to Gerald's policy with the other farmland rather than adding it to Kent's policy.  The trial court rejected this argument and the Cherrys have not appealed this finding.  Therefore, our review is limited to the issue of whether Gerald was a "farm employee" within the meaning of Kent's policy.

he needed additional help. Kent would pay Gerald for the work by paying some bills or otherwise compensating him.

. . .

There are a number of exclusions in the policy. Incorporated into the policy are farm endorsements which change some exclusions. In the policy, exclusion 8 is bodily injury to a farm employee. This exclusion is removed by an endorsement to the policy. Under the farm endorsement TF 36, personal liability is amended to extend liability coverage to insureds for occurrences to farm employees while engaged in the farming operations of an insured at or away from the insured premises. Kent's policy included such an endorsement. The effect is to extend liability coverage to Kent for injuries to farm employees notwithstanding the exclusion from liability coverage of bodily injury arising out of the ownership, maintenance or use of any premises which is not the insured premises.

**Farm employee:** "Farm Employee" is defined in the policy as "your employee, under the direction of an insured, whose duties and acts are in connection with your farming operations."

Kent testified he requested Gerald to go to the Humphrey farm to help another farm hand use the grinder to make cattle feed. Gerald was working for Kent using the grinder when he was injured. He was at that time considered Kent's employee, under the direction of Kent, doing acts in connection with Kent's farming operation.

Susan Mashburn testified she does accounting for Cherry Cattle Company, which is owned by Kent Cherry, and prepared the tax returns. Some business expenses for the proprietorship included payments to Gerald Cherry. The W-3 did not include Gerald Cherry as an employee for income tax purposes. Gerald Cherry was drawing social security and they did not want to affect his social security benefits. That purpose was so no deductions were made for the employer's part for social security. There was only one individual, Mr. Fisk, who was listed on the W3. She also did Gerald Cherry's return and he did not earn enough money to file a Form 1040. When he did file a return, he did not list income from Kent's farming operation separately. Some of the payments to Gerald by Kent Cherry were expensed as farming expenses.

In the area of Worker's Compensation law, to come under the definition of employee, the plaintiff "must prove that, at the time of the injury, there was an expressed or implied agreement that the worker was to be compensated for his services by the alleged employer." *See, e.g.* Hubble v. Dyer, 188 S.W.3d 525 at 533, citing Black v. Dance, 643 S.W.2d 654 (Tenn. 1982). In this case, there

was an expressed or implied agreement that Gerald would be paid for work done in the farming operations. There was both an express agreement that he would be paid, and an implied from past conduct. Part of the testimony of Kent included assertions that Gerald got standard bills paid each month for his work on Kent's farming operations. Most every month he received the same thing. These payments were considered wages and not a gift. The payments were deducted by Kent on the tax return, and considered as expenses. Gerald did not receive a W-2 because he was receiving social security. At the time of the injury Gerald was using Kent's machine to perform farming work for Kent. His pay was not always consistent, but he was paid. Applying the Hubble analysis, Gerald would be considered an employee under the policy of Kent.

The factors to be considered in determining whether an individual is an employee or an independent contractor are: 1) the right to control the conduct of work. In this case Kent had the right to control the conduct of work. Gerald did not work unless Kent told him what needed to be done. On the day of the injury, Kent had directed what work needed to be done and Gerald and another farm hand were carrying out the work when Gerald was injured; 2) the right of termination. Kent could use Gerald's help or not use it. Gerald did not have the authority to hire or fire other people for Kent. In a sense, Kent could fire his dad by not requesting he perform certain jobs; 3) the method of payment. Gerald was paid for work done. Kent believed he was paid about the same each month. Gerald was of advanced years and retired from other employment, and drawing social security. He was paid as needed. It is not determinative whether Gerald listed that income separately on his return. Testimony established he was attempting to preserve his social security, and expected to be paid for work done, and in fact was paid; 4) the freedom to select and hire helpers. This duty was Kent's and not Gerald's; 5) the furnishing of tools and equipment. Gerald was working with Kent's tools and equipment. 6) self-scheduling of work hours. Kent scheduled the work hours and the work for Gerald, when he wanted Gerald to work; and 7) the freedom to offer services to other entities. Gerald worked for Kent, who was a family member. There was no proof that he worked for others.

While all the factors are important, the "right to control" is the primary test. Masiers v. Arrow Transfer & Storage Co., 639 S.W.2d 654, 656 (Tenn. 1982). This factor is strong in favor of Gerald being considered more employee than independent. Kent had the right to control what work was done, and when he needed Gerald's help. However, none of these tests, standing alone, is conclusive. Id. Each

particular relationship must be examined and the circumstances weighed. Lindsey v. Johnson, 601 S.W.2d 923, 925 (Tenn. 1980). Applying the factors, the court finds that Gerald is an employee of Kent under the policy.

Gerald Cherry was an employee of Kent (dba Cherry Cattle and Land Company) under the definition in the policy.

. . .

Based on the foregoing findings, the court declares that Tennessee Farmers has a duty to defend Kent Cherry and Cathy Cherry in the lawsuit filed against them by Gerald Cherry and Shirley Cherry; that Tennessee Farmers has a duty to indemnify Kent Cherry and Cathy Cherry for damages claimed in the lawsuit filed against them by Gerald Cherry and Cathy Cherry.

Tennessee Farmers filed a timely notice of appeal to this Court.

## II. ISSUE PRESENTED

On appeal, Tennessee Farmers contends that "[t]he trial court erred in finding that Gerald Cherry was an 'employee' of Kent Cherry at the time Gerald was injured when his clothing became caught up in a 'power takeoff' running from a corn grinder to a farm tractor."

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2007); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). Issues relating to the scope of insurance coverage present questions of law. *Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000). We review a trial court's interpretation of contract language de novo with no presumption of correctness. *Travelers Indem. Co. of America v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). In general, courts should construe insurance policies in the same manner as any other contract. *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). "An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006) (citing *Parker v. Provident Life & Acc. Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979)). The policy language must be taken and understood in its plain, ordinary, and popular sense. *Hutchison*, 15 S.W.3d at 814; *Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 477 (Tenn. Ct. App. 1996).

Whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. ***Travelers Indem. Co.***, 216 S.W.3d at 305 (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)). The insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. ***Id.*** An insurer may not properly refuse to defend an action against its insured unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage. ***Drexel Chemical Co.***, 933 S.W.2d at 480. The duty to indemnify is based upon the facts ultimately found by the trier of fact. ***Travelers Indem. Co.***, 216 S.W.3d at 305. "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." ***Id.*** (citing *Dempster Bros. Inc. v. U.S. Fid. & Guar. Co.*, 54 Tenn. App. 65, 388 S.W.2d 153, 156 (1964)).

## IV. DISCUSSION

As previously discussed, the policy at issue provided liability coverage to Kent and Cathy Cherry for "occurrences to farm employees while engaged in the farming operations of an insured at or away from the insured premises." Similarly, the policy authorized medical payments to farm employees in certain instances. The only issue presented for our review is whether Gerald was a "farm employee" within the meaning of the policy. The policy defined a "farm employee" as "your employee, under the direction of an insured, whose duties and acts are in connection with your farming operations." However, the term "employee" is not defined in the policy.

In arguing that Gerald Cherry was or was not an employee, the parties have relied exclusively on cases defining an "employee" for purposes of the workers' compensation statutes or other specific areas of the law. Tennessee Code Annotated section 50-6-102 provides a lengthy definition, exceeding three hundred words, of the term "employee" for purposes of the Workers' Compensation Law, Tenn. Code Ann. § 50-6-101, *et seq.* However, the insurance policy at issue does not refer to or incorporate that statute's definition of "employee." In ***Blue Diamond Coal Co. v. Holland-America Ins. Co.***, 671 S.W.2d 829, 832 (Tenn. 1984), the Supreme Court recognized that the definition of an "employer" for purposes of a state's workers' compensation laws is not determinative of whether the person or entity is an employer within the meaning of an insurance policy. In that case, the Sixth Circuit Court of Appeals had previously held that a certain parent company was not the "employer" of deceased miners for purposes of the Kentucky Workmen's Compensation Act. ***Id.*** at 832. However, that finding did not preclude the parties from litigating, in a separate case, whether the parent company was the miners' "employer" as the term was used in an insurance policy. ***Id.*** The Tennessee Supreme Court stated that "the issues, although similar, are by no means identical." ***Id.***

> The issue before this Court concerns coverage for common law liability under the insurance policies in question and not [the parent company's] relationship to the [] miners as defined by the Kentucky Workmen's Compensation Act. Resolution of the issues in the present litigation requires interpretation of the language of the

> policies whereas the [Sixth Circuit] court was faced with the construction of the Kentucky Workmen's Compensation Act with regard to the relationship of the parent corporation to the employees of its subsidiary corporation.

*Id.* Applying the Court's reasoning to this case, we conclude that the definition of "employee" provided in the Workers' Compensation Law does not control the issues before us. In fact, there are several other statutory definitions of the term "employee" that are applicable to specific areas of the law. *See, e.g.*, ***Bredesen v. Tenn. Judicial Selection Comm'n***, 214 S.W.3d 419, 430 (Tenn. 2007) (quoting the definition of "employee" provided in 42 U.S.C. § 2000e(f) for purposes of the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act); ***Eatherly Constr. Co. v. Tenn. Dep't of Labor and Workforce Dev.***, 232 S.W.3d 731, 735 (Tenn. Ct. App. 2006) (discussing the definition of "employee" in Tenn. Code Ann. § 50-3-103 for the Occupational Safety and Health Act and various other definitions in construction industry regulations); ***Hensley v. Fowler***, 920 S.W.2d 649, 652 (Tenn. Ct. App. 1995) (referring to the Governmental Tort Liability Act's definition of "employee" located at Tenn. Code Ann. § 29-20-102(2)). However, as previously discussed, we must apply the plain, ordinary meaning of the term "employee" when interpreting the policy language.

In ***American Sur. Co. of N.Y. v. City of Clarksville***, 204 Tenn. 67, 77, 315 S.W.2d 509, 513 (1958), our Supreme Court was similarly faced with interpreting the term "employee" in an insurance policy when the policy itself did not define the term. The Court found the term unambiguous, explaining that "[t]he ordinary and usual meaning of the word 'employe' is one who is employed by another and works for wages or salary without regard to whether the employment be legal or illegal." ***Id.***

Although ***American Surety Co.*** is an older case, its construction of the term "employee" is consistent with the ordinary understanding of the word today. "When called upon to interpret a term used in an insurance policy that is not defined therein, courts in Tennessee sometimes refer to dictionary definitions." ***American Justice Ins. Reciprocal v. Hutchison***, 15 S.W.3d 811, 815 (Tenn. 2000). *Webster's II New College Dictionary* (1995) defines an "employee" as "[a] person who works for another in exchange for financial compensation." *Black's Law Dictionary* (8th ed. 2004) defines an "employee" as "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."

In the case at bar, it is undisputed that Gerald was working for Kent and/or Cherry Cattle and Land Company when he was injured, and he was being compensated from the business account. Kent had instructed Gerald to grind the corn, which would be used to feed cattle owned by Cherry Cattle and Land Company. Gerald was working alongside Marvin Fisk, who was indisputably an employee of Cherry Cattle and Land Company, using equipment owned by Cherry Cattle and Land Company. The land where the accident occurred was owned by Kent and his brother Doug. Gerald had no ownership interest in the business, the land, or the equipment. Nevertheless, Tennessee

Farmers points to various aspects of the relationship between Gerald and Kent Cherry to support its contention that Gerald was not an employee of Kent or Cherry Cattle and Land Company.

First of all, Tennessee Farmers argues that Gerald was not an employee because Gerald did not have specifically set working hours and Kent did not have "control" over Gerald. Cathy Cherry, Kent's wife, testified that "[y]ou don't really have set hours when it comes to livestock." For example, Marvin Fisk was paid "hourly with a minimum," meaning that he was paid a certain amount per week whether he worked or not. Kent stated that he relied on Gerald every day. According to Kent, the parties would simply discuss what needed to be done each morning and see that those tasks were completed. Kent explained that it was not necessary to give Gerald particular instructions for each task, and that Gerald could perform duties better than anyone else. Regarding the parties' authority or control over each other, Kent acknowledged that he would obey his father's instructions, stating, "he is my father." However, both Kent and Gerald agreed that Kent was the boss and had the "ultimate say so" in the business. Kent could control the work and ultimately terminate the work relationship with Gerald if he wished. Counsel for Tennessee Farmers did ask Gerald whether Kent had "the power to make [Gerald] do things for him," and Gerald replied that he did not think Kent had the "power" to make him do things that he did not want to do. Gerald said that if he did not want to do something, he wouldn't do it. Gerald went on to explain that working in the cattle business was "something that I like to do. I've done it all of my life, so I just keep a doing it, you know." Tennessee Farmers contends that this testimony demonstrates Kent's lack of "control" over Gerald, but we disagree. We interpret Gerald's statement as simply recognizing that he was an at-will employee who could quit working if and when he desired. This does not mean that Gerald was not an employee.

Tennessee Farmers also contends that Gerald was not being paid for his work, as an employee would be, because he was not paid a specific hourly rate or salary. Instead, Gerald or his wife wrote checks for "what he needed" from the business account for bills, and Gerald informed Kent of his expenditures. Tennessee Farmers points to the fact that Kent's brother, Doug, also received money from the business account, even though he was not considered an employee of Cherry Cattle and Land Company. In addition, Kent continued to pay Gerald's bills from the business account during the time that Gerald was injured and unable to work, but it is not clear whether these payments were treated as personal or business expenses. Tennessee Farmers contends that Kent simply gave money to his family members as gifts, and Gerald was not really being paid for his work. We would first note, with regard to the money that Doug received from the cattle business, Tennessee Farmers fails to mention that Doug and Kent were joint owners of much of the property where Cherry Cattle and Land kept its cattle and equipment. It is not at all clear that Doug received the money simply as a gift. In fact, Kent testified that Doug received money from the business because the business was profiting off land that Doug owned. Although the arrangement between Kent and Gerald was not a typical method of compensation, both parties, along with Kent's wife, testified that the money Gerald received from the account was compensation for the work he performed for Kent's cattle business. Kent denied the suggestion that Gerald's compensation had nothing to do with the amount of work that he did, and he stated that he sometimes declined permission when Gerald asked to spend money. In essence, Tennessee Farmers asks us to discredit

-10-

the testimony from Kent, Cathy, and Gerald Cherry that the payments to Gerald were compensation for his work and infer that the payments were gifts. The trial court specifically found that although Gerald did not receive a "salary per se," he was compensated for his work by the payment of certain bills. The court's final order stated: "In this case, there was an expressed or implied agreement that Gerald would be paid for work done in the farming operations. There was both an express agreement that he would be paid, and an implied from past conduct. . . . These payments were considered wages and not a gift." When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 732 (Tenn. 2002). The evidence supports the trial court's finding that Gerald and Kent had agreed to have some of Gerald's bills paid by the company as a substitute for wages.

Tennessee Farmers also points to the fact that Cherry Cattle and Land Company did not file Forms W-2 and W-3 treating Gerald as an employee for federal income tax purposes, and there were no Social Security and Medicare taxes withheld from his compensation. However, Cherry Cattle and Land Company did not file Forms 1099 treating Gerald as an independent contractor either. Cherry Cattle and Land Company only submitted Forms W-2 for Marvin Fisk. Payments made on behalf of Gerald Cherry were sometimes deducted as business expenses, depending on the circumstances. Kent testified that Gerald's compensation was treated differently because he was "technically retired" and drawing social security. On the ambulance report, Gerald's wife Shirley listed his occupation as "self-employed," and Gerald did not report any income from Cherry Cattle and Land Company on his income tax returns. In sum, for tax purposes, Gerald was not treated as an employee or an independent contractor of Cherry Cattle and Land because he was receiving social security retirement benefits. However, he was undoubtedly performing work for Cherry Cattle and Land Company and being paid from the business account. We recognize that the parties' failure to classify Gerald as an employee in some instances may be evidence of the true employment relationship between the parties. However, we do not believe that the parties' tax returns are conclusive of whether Gerald was, in fact, an employee of Cherry Cattle and Land. In *American Surety Co.*, the Supreme Court defined an employee as "one who is employed by another and works for wages or salary without regard to whether the employment be legal or illegal." 204 Tenn. at 77, 315 S.W.2d at 513. In that case, a fourteen-year-old boy was found to be an "employee" within the meaning of an insurance policy even though he was employed in violation of the child labor statutes. *Id.* at 72, 315 S.W.2d at 511. Here, the legality of how the parties treated Gerald's compensation for tax purposes does not prevent Gerald from being an employee within the meaning of the insurance policy.

This case certainly involves an unusual work relationship, and there are facts in this case to support both parties' positions. From our careful review of the record, considering all the facts and circumstances involved, we conclude that Gerald Cherry was a "farm employee" within the meaning of the insurance policy. It is undisputed that Gerald continued to work in the cattle business after he began receiving retirement benefits, and Kent became the boss of the company. On the day Gerald was injured, he was grinding corn, under Kent's direction, using equipment belonging to

Cherry Cattle and Land Company for the company's benefit. Gerald expected to be paid for working and was, in fact, paid. We hold that the alleged damages are within the risk covered by the policy Tennessee Farmers issued to Kent and Cathy Cherry, and accordingly, Tennessee Farmers has a duty to defend the insureds in the underlying lawsuit. Tennessee Farmers is further obligated to indemnify the insureds for damages that may be awarded against them to the extent that the policy provides for indemnification of such damages for occurrences to farm employees.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Tennessee Farmers Mutual Insurance Company, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.